# GORDON *v.* GWYDIR.

CONTRACTS; ASSIGNMENT; EQUITY.

1. An agreement by attorneys having a contract for a contingent fee with Indians, approved by the Secretary of the Interior and the Commissioner of Indian Affairs, as required by Rev. Stat. sec. 2103, to pay other attorneys, who had assisted in its procurement, a part of the fee, and creating an equitable lien therefor upon the fee when received, is not an assignment of the contract within the meaning of Rev. Stat. sec. 2106, prohibiting assignments of such contracts except under certain conditions.

2. Attorneys to whom awards were made by the court of claims under the act of Congress of June 21, 1906 (34 Stat. at L. 377, chap. 3504), . conferring jurisdiction on that court to ascertain the amount of compensation to be paid attorneys who had rendered services as counsel for certain Indians under contracts with them, were *held* to be liable over for portions of such awards to other attorneys whom they had employed to assist them under a contract with the Indians, although such contract had expired by limitation and the awards were much less than the fee provided for by the contract.

No. 2068. Submitted February 2, 1910. Decided March 1, 1910.

HEARING on an appeal by one of several defendants from a decree of the Supreme Court of the District of Columbia, sitting as an equity court, establishing a lien upon certain funds.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree of the equity court rendered on hearing, on bill and answer.

The bill was filed by the appellees, Richard D. Gwydir, J. W. Edwards, and Wendell Hall, against Charles H. Treat, as Treasurer of the United States, Hugh H. Gordon, and Benja-

min Miller, administrator of the estate of Levi Maish, deceased.

The following facts substantially are alleged: That the Indians of the Colville Indian Reservation in the State of Washington were on May 9th, 1881, possessed of certain lands in said State, and entered into an agreement with the United States whereby they ceded to the latter one half of their said reservation on a promise of compensation in the sum of $1,500,-000, which the United States failed to pay. On May 12th, 1894, said Indians entered into a contract with Levi Maish and Hugh H. Gordon, partners practising law in the city of Washington, whereby the said Maish & Gordon undertook to prosecute the said claim against the United States for a fee of 15 per cent of the amount that might be recovered. Said contract was presented to the Secretary of the Interior, who, after reducing the amount to 10 per cent, approved the same. Complainants were the agents of Maish & Gordon in procuring the execution of said contract by the said Indians, and on June 15th, 1894, entered into a contract with them for compensation for their said services. Said contract reads as follows:

Richard D. Gwydir, J. W. Edwards, and Wendell Hall, of the first part, and Levi Maish and Hugh H. Gordon, of the second part.

Whereas, R. D. Gwydir, J. W. Edwards, and Wendell Hall have heretofore, at our instance, request, and upon our agreement to compensate them therefor, rendered services to Levi Maish and Hugh H. Gordon, the undersigned, in attending to the signing and execution of a contract between said Maish & Gordon and the Indians resident on the Colville Reservation in the State of Washington, by which contract said Maish & Gordon are made the sole attorneys of said Indians, to prosecute their claim against the United States for the sum of one million five hundred thousand dollars (1,500,000), which is claimed to be due said Indians under the treaty and agreement entered into between the United States and the said Indians on the 9th day of May, 1891.

We do hereby agree, in consideration of said services, to pay to said parties out of the fee to be paid us for the collection of said claim, when the same may or shall be recovered thirty thousand dollars ($30,000), ten thousand dollars to each of said parties, Gwydir, Edwards, and Hall.

Provided that we recover the total amount of said claim, and are ourselves paid a fee of fifteen per cent upon the entire claim of one million five hundred thousand dollars ($1,500,-000). It is, however, distinctly understood and agreed that in case we do not collect the full amount of said claim of one million five hundred thousand dollars (1,500,000), or in case the commission paid us as attorneys for said Indians is reduced below fifteen per cent, then the amount paid to the said Edwards, Gwydir, and Hall shall be reduced in the same proportion. In other words we agree to pay said Gwydir, Edwards, and Hall jointly in a fee amounting in the aggregate to six forty-fifths (6/45) of the fee or commission actually paid us. This six forty-fifths (6/45) part of the fee to be divided equally between the said Gwydir, Edwards, and Hall.

Witness our hands and seals this 15th day of June A. D. 1894.

| (Signed.) | R. D. Gwydir. | (Seal) |
| | J. W. Edwards. | (Seal) |
| | Wendell Hall. | (Seal) |
| | Levi Maish. | (Seal) |
| | Hugh H. Gordon. | (Seal) |

That long thereafter, July 21st, 1906, the Congress of the United States appropriated the said sum of $1,500,000 in payment of said claim, but in said act invested the court of claims with jurisdiction to fix the amount of the compensation of the attorneys engaged in the prosecution of said claims, authorizing said court, in determining said compensation, to consider all contracts or agreements entered into by said Indians with attorneys who have represented them. About February 26th, 1899, Levi Maish died, and Benjamin Miller was thereafter appointed administrator of his estate. On May 28th, 1908, the court of claims, under the authority of the act of Congress afore-

said, awarded to Maish & Gordon the sum of $20,000 in full for their compensation for services rendered said Indians, dividing the same into sums, namely, $14,000 to Gordon, and $6,000 to Miller as administrator of Maish. That, by the terms of the contract aforesaid, complainants are entitled to an equitable lien upon said sum to the extent of two fifteenths thereof. That Gordon and Miller have refused to recognize said demand, and are about to collect said $20,000 from the Treasurer of the United States, and will do so unless the same be restrained.

The prayers are for an injunction to restrain said payment; for the appointment of a receiver to collect and hold the said fund; and for a decree for complainants' part of the same, namely, six forty-fifths, or two fifteenths of the same.

The injunction was granted, and, later, receivers were appointed, into whose hands the fund passed. The joint answer of Gordon and Miller, after the denying the allegation of partnership, admits the allegations of the bill relating to the contracts set out therein, the appropriation of the money, and the reference to, and judgment of, the court of claims. They allege that the award of the court of claims was not to Gordon & Maish as partners, but to each as individuals for services rendered. They further say that the contract with complainants was based on the contract between the Indians and Gordon & Maish, which contract by its terms expired on July 25th, 1904. That two years after the expiration of said Indian contract, the appropriation act was passed, conferring jurisdiction on the court of claims to determine the amount of compensation to be paid attorneys who had performed services for the Indians, and to enter judgment for the same. That, pursuant to said act, defendants and complainants appeared in said court and presented their respective claims. Complainants presented and relied upon their contract aforesaid, and defendants presented and relied upon their contract with the Indians. That said court made its award to defendants entirely irrespective of said contract, and upon the principle of *quantum meruit* solely, holding that such was the purpose of the act submitting the matter to its judgment. Said awards were made for the individual

services of Gordon & Maish, the latter up to the time of his death. That the said act afforded the only means for the determination of any claims by any persons whatsoever, and the decision of said court is final and conclusive. In conclusion it is alleged that the claim of complainants is based upon the successful prosecution of the contract with the Indians, and the same expired without the recovery of anything thereunder, and has never been revived, wherefore defendants are not liable under the contract with complainants.

The court decreed a recovery in favor of complainants against the defendants jointly for the sum of $2,666.67, and ordered the same paid by the receivers, but also ordered the payment to Miller of $6,000, less the receivers' commissions.

The remainder of the money due Gordon was left in the hands of the receivers to answer the other claims preferred against him. Gordon also has appealed after severance from his codefendant.

We have said that the cause was submitted on bill and answer, because, while the decree recites a hearing on pleadings and proofs, no testimony appears to have been taken.

*Mr. James B. Archer* for the appellant.

*Mr. Charles Poe* and *Mr. Frank D. Blackistone* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court.

The following errors have been assigned by appellant: 1. Error in holding that the contract with complainants gave them rights in the awards to Gordon & Maish independent of their contract with the Indians, and notwithstanding the fact that Maish & Gordon were deprived of all benefits under said contract. 2. Error in holding that the contract in suit, being an assignment of a part of an Indian contract, was invalid because it had not been approved and recorded as required by Rev. Stat. sec. 2106.

The question raised by the second assignment will be first considered. Rev. Stat. sec. 2103, provides that no agreement shall be made by any person with any Indian tribe, or individual Indian, in consideration of services for said Indians in reference to lands, moneys, etc., under treaties or laws of the United States, etc., unless in writing, and, among other requisites, approved by the Secretary of the Interior and the Commissioner of Indian Affairs. It appears that the contract between Gordon & Maish and the Indians came under and was in compliance with this statute.

Rev. Stat. sec. 2106, provides that "no assignment of any contracts embraced by sec. 2103, or of any part of one, shall be valid unless the names of the assignees and their residences and occupations be entered in writing upon the contract, and the consent of the Secretary of the Interior and the Commissioner of Indian Affairs to such assignment be also indorsed thereon."

There is no pretense that the contract upon which the suit is founded was indorsed or approved, as required by sec. 2106, and the question is whether it is such an assignment of a part of the Indian contract as to bring it within its purview.

The Indians are the wards of the United States, and the supervision of their affairs and the protection of their interests have been confided to the Secretary of the Interior. In view of this relation it was eminently proper, as is done by sec. 2103, to require all contracts made with the Indians touching their lands and treaty claims, to be made subject to the approval of the Commissioner of Indian Affairs and the Secretary of the Interior, in order to prevent undue advantage from being taken of their ignorance and improvidence. For the same reason, in order to prevent approved contractors from thereafter assigning their contracts, in whole or in part, to improper persons, sec. 2106 makes the validity of such assignments depend upon a like submission and approval. These provisions are for the protection of the Indian solely, and should be liberally construed to that end. But we see no reason for extending them by construction, so as to prohibit the approved contractors from em-

ploying others to assist them afterwards, or from making contracts pledging a part of their prospective compensation, provided such contracts do not amount to an assignment of the contract and the substitution of other contractors. The liability of the Indians could not be affected thereby. This view of the operation of sec. 2106 seems to have prevailed with Congress; for the clause of the act, under which the attorneys' fees were allowed by the court of claims, expressly recognized contracts of Maish & Gordon employing associates and stipulating for a portion of their fees. It expressly required that the petition for allowance should be filed by Butler & Vale, who came into the Indians' service by contract with Maish & Gordon. Moreover, the court of claims found no difficulty in recognizing these contracts of Maish & Gordon in distributing the fund. Turning to the contract, which is set out above, we find nothing in it assigning the contract of Maish & Gordon, or any part of it, to the complainants. Maish & Gordon, in consideration of their services in procuring the Indian contract, agree to pay them six forty-fifths of whatever sum they may receive by virtue of said contract, and the language is such as to create an equitable lien thereon when realized.

The argument on behalf of the appellant under the other assignment of error is substantially this: Maish & Gordon contracted with appellees solely with a view to the benefits to accrue to the former under their contract with the Indians. The consideration of the second was services in procuring the first,—no service was to be rendered in the prosecution of the demand of the Indians. The payment of the appellees was contingent upon the payment of the fee of the Indians in accordance with the contract. The provision in the contract with appellees relating to the proportional reduction had no reference to the possibility of Maish & Gordon being paid on a *quantum meruit* basis. The contract between the Indians and Maish & Gordon expired by limitation two years before the appropriation act was passed, and that act contemplated payment, not under any contract, but for services actually performed.

We are not impressed by the strength of this argument. It

is true that when the contract was made all parties expected performance of, and payment under, the Indian contract. But it contemplated a probable reduction of the commissions thereunder, and provided for a corresponding reduction in the compensation of appellees. After providing for this reduction at length, this clause follows: "In other words, we agree to pay said Gwydir, Edwards, and Hall jointly in a fee amounting to six forty-fifths (6/45) of the fee or commission actually paid to us." True, also, the Indian contract with Maish & Gordon had expired by limitation, but Maish & Gordon continued to represent the Indians by virtue of that employment. Congress recognized them and their associates in providing for the ascertainment of the proper fee by the court of claims. The Indians did not declare the contract at an end. They continued to receive the services and acquiesced in this practical extension of the contract.

Congress, however, in the exercise of its unquestioned power in the premises, declined to make an appropriation according to the terms of the contract. Instead, it conferred jurisdiction upon the court of claims to ascertain the amount of compensation to be paid to the attorneys who had rendered services as counsel on behalf of said Indians in the prosecution of the claim. And in determining that compensation the court was permitted to consider "all contracts or agreements entered into by said Indians with attorneys, who have represented them in the prosecution of said claims." See act of July 21st, 1906. While the petition for the ascertainment of the fee was directed to be filed by Butler and Vale, the court of claims entertained interventions by other attorneys, including Gordon & Maish's administrator, and made separate awards to them as follows: To Miller $6,000; to Gordon $14,000; to Butler $20,000; to Vale $10,000; to D. B. Henderson $5,000; to H. J. May $3,000; and to Frederick C. Robertson $2,000. This division was contested in the case of *Butler* v. *Indian Protective Asso.* ante, 284, but it was held that whether erroneous or not the judgment of the court of claims was conclusive and binding upon all of the parties. It is sufficient to say that in the case before the court

of claims under the reference by Congress, the appellees had no standing. Not pretending to have any contract with the Indians, or to have rendered any services to them, they were expressly excluded by the terms of the act. Their services were rendered to Maish & Gordon alone, and their contract was with them. Now, while Maish & Gordon·did not receive the compensation provided in their contract with the Indians, the same having been disregarded by Congress to that extent, nevertheless it was the foundation of the award actually made to them. Their services had, from the beginning to the end, been performed under and by virtue of that contract, which Congress provided should be considered in making the award. Without that contract as a foundation for the services rendered, they would have had no standing whatever in the court of claims. That the court allowed other associate counsel large sums, and only assessed the value of their personal services at $20,000, is their misfortune. Their misfortune is shared by the appellees, who, under their contract, are only entitled to six forty-fifths of the amount actually awarded. To this we think they were justly entitled, and the decree awarding it to them will therefore be affirmed, with costs.         · *Affirmed.*