Booth, J.,
delivered the opinion of the court:
This is a suit under a special jurisdictional act to recover attorney fees. The services alleged were performed in the prosecution of the claim of the Colville Indians against the United States, and were confined exclusively to the committees of Congress. The Colville Indians occupied a reservation set aside to them by executive order in the northeastern part of the State of Washington. By an act of Congress approved August 19, 1890 (26 Stat. L., 355), the President appointed a commission to treat with said Indians respecting the cession of a portion of said reservation to the United States. On May 9, 1891, the commission consummated an agreement with the' Indians; it provided for the cession of the entire north half of their reservation to the United States. The area of lands so ceded was estimated at 1,500,000 acres, and as a part consideration therefor the United States agreed to place as a trust fund to their credit in the Treasury the sum of $1,500,000, bearing interest annually at the rate of 5 per cent.
In pursuance of the above agreement the lands so ceded were by act of Congress thrown open to public settlement; but no appropriation of money was made, and that part of the agreement providing for its payment was never complied with until the passage of the act of June 21, 1906. The Indians became anxious and, justly, quite solicitous. Their appeals to the Congress subsequent to their agreement was met in 1892 by an adverse report from the Senate Committee on Indian Affairs, in which their right to compensation as per agreement was directly challenged by a most positive denial of their title to the lands in question.
In May, 1894, the said Colville Indians entered into a contract with Levi Maish, of Pennsylvania, and Hugh H. Gor *515 don, of Georgia, attorneys and counselors at law, by the terms of which the said attorneys were to prosecute their said claim against the United States and receive as compensation therefor 15 per cent of whatever amount they might recover. This contract was subsequently approved for 10 per cent, as the law required, by the- Secretary of the Interior, and extended for a period of ten j^ears only. It is the sole and only contract ever executed by said Indians respecting said claim. It is likewise the only legal authority whereby any attorney appeared for said Indians during its operation'; in fact, all with the possible exception of two claimants herein rendered services under this contract, and those who did not appear thereunder were without any authority whatever to appear for.said Indians at any time or place. Nothing was accomplished for the Indians under the Maish-Gordon contract. Notwithstanding its expiration, however, a number of attorneys claim to have rendered efficient services and to have accomplished, by the permission and authority of the Congress and the committees thereof, the final compliance with the agreement of 1891 and secured by the act of June 21, 1906, an appropriation covering the money consideration mentioned in said agreement. In the same act making said appropriation appears the jurisdictional statute whereby said claimants appeared and filed their petitions in this court. The language of the act is as follows:
“ Jurisdiction is hereby conferred upon the Court of Claims to hear, determine, and render final judgment in the name of Butler and Vale (Marion Butler and Josiah M. Yale), attorneys and counselors at law, of the city of Washington, District of Columbia, for the amount of compensation which shall be paid to the attorneys who have performed services as counsel on behalf of said Indians in the prosecution of the claim of said Indians for payment for said land, and in determining the amount of compensation for such services the court may consider all contracts or agreements heretofore entered into by said Indians with attorneys who have represented them in the prosecution of said claim, and also all services rendered by said attorneys for said Indians in the matter of said claim. Petition hereunder shall be filed in said court, by the said attorneys (Butler and Vale), within thirty days from the passage of this act, and the Attorney-General shall appear on behalf of the defendants, *516 and said cause shall be given preference for immediate hearing in said court, and the Secretary of the Treasury is hereby authorized and directed to pay the sum of money so awarded by said court to the said attorneys (Butler and Vale), upon the rendition of final judgment, out of the said sum herein set apart or appropriated for the benefit of said Indians, and payment of said judgments shall be in full compensation to all attorneys who have rendered services to said Indians in the matter of their said claim, the same to be apportioned among said attorneys by said Butler and Yale as agreed among themselves: Provided, That before any money is paid to any attorney having an agreement with Butler and Vale as to the distribution of said fees, each of the same shall execute and deliver to the Secretary of the Interior a satisfaction and discharge of all claims and demands for services rendered said Indians in the matter of their said claims.”
On June 26, 1906, Butler and Yale filed in this court, in pursuance of the foregoing statute, their petition herein, seeking to recover the sum of $225,000. The allegations of the petition follow the jurisdictional act and especially assert the right of prosecution and recovery of judgment to be in said petitioners in strict accordance therewith. Subsequent to the filing of said petition, six intervening petitions were filed, in each of which there appears an express disclaimer of any valid agreement respecting the distribution of any sum recoverable under the statute, and asserting the right of prosecution and recovery herein, alleging the performance of professional services as contemplated by the statute, and expressly praying for the rendition of individual judgments as respects the distribution of any fund recovered under the law. Motions to dismiss said intervening petitions were duly filed by Butler and Vale, and the entire controversy, including said motions, was, by order of court, consolidated, heard together, and will be disposed of as one cause.
The language of the jurisdictional statute indicates its enactment in pursuance of a preexisting state of affairs between the claimants, and especially as concerns a previous agreement among the attorneys concerned, as to the distribution of any fees recovered thereunder. The words “the same to be apportioned among said attorneys by said Butler and Yale as agreed among themselves” can have no other import. The statute was undoubtedly enacted with these *517 special limitations and conditions upon information then before the Congress that some arrangement existed whereby the total sum recoverable under the law should be distributed by a fixed and determined agreement, leaving no discretion to the distributers, and limiting the court to the ascertainment of the amount only. It is apparent that the Congress was not endeavoring to deprive this court of its power and authority over its own judgments and decrees. The Congress never intended to confer upon Butler and Yale that degree of judicial authority and power which would enable them to distribute a judgment of this court in which they were interested as parties litigant upon their own discretion; to have so enacted would have been a senseless and meaningless proceeding, obnoxious to the law, and devoid of justice. (Pam To Pee v. United States, 187 U. S., 371-382-383.)
This portion of the statute is directory; it was designed for convenience and simplicity; to avoid a multiplicity of suits; and purposed to conclude the rights of the claimants under presupposed agreement with respect to the same. This construction of the statute is sustained by reference to the context of the whole act. The proviso likewise circumscribes the authority of Butler and Yale as to distribution of the funds, and expressly withholds payment of any sum so directed by them until final receipts by the distributees have been executed and filed with the Secretary of the Interior in accordance with a supposed valid and existing agreement with respect to the same. Courts being exceedingly reluctant to withhold jurisdiction where the same can be reasonably inferred to exist from the language and intent of a jurisdictional statute will not deny redress to suitors because a portion of the statute may fail, if sufficient remains upon which to predicate the relief intended. (Supervisors v. Stanley, 105 U. S., 305.)
While it is true special statutory jurisdiction and remedies are not to be extended by construction beyond a fair import of the legislative grant, yet it has long been the law that doubts may be solved in favor of jurisdiction unless some established law is violated. We are not unmindful of the authority of the Congress to prescribe rules by which a par *518 ticular case or class of cases over which this court is given jurisdiction shall be determined. No doubt exists that jurisdiction is strictly limited to the prescribed terms of the statute. This court has never held otherwise. There is nothing, however, in the special jurisdictional statute now under consideration which by express language curtails the judicial functions of the court, and proscribes an exercise of that inherent power lodged in all judicial tribunals to give effect to the legislative intent, and otherwise construe a statute ambiguous upon its face, and by the very existence of which the machinery of the court is set in motion. (Enlich, on Statutory Construction, sec. 430.)
The objection does not extend to the subject-matter of the statute, or in anywise affect the substantive rights of the parties. It can at most simply affect a mode of procedure, a subject secondary in importance to the real object, purpose, and scope of the act. (Liverpool Bank v. Turner, 30 L. J. Ch., 380.)
The statute having simply recited a supposed agreement, the language being “as agreed among themselves,” is of itself quite indefinite. Whether it was oral or under seal likewise failed to appear, until the same was produced in this court, by its special order, and only then under protest. The parties thereto, the terms thereof, were never revealed to certain of the interveners until the production of the instrument in this court at the trial of this cause. To require of this court the adjudication and determination of a cause involving a claim of $225,000, and place whatever judgment it might render, to be distributed according to an alleged agreement which it might never have seen, would entail results so absurd in their consequences, so at variance with well-recognized rules of legal procedure and established precedents as to render such an act, standing alone, absolutely void. The Congress never intended such results, and even if so intended subsequent events have proven that the information attending the enactment of the statute did not fully embrace the entire history of the subject-matter of the legislation, and that the Congress so anticipated will appear hereafter.
*519 If it were otherwise, this case must fail. The intervening petitions expressly repudiate the existence of an agreement of distribution. The findings show that some at least of the interveners were not parties to the alleged agreement at all. The court’s conclusion shows the absence of any such agreement as the statute contemplated to exist.
That particular direction contained in the statute is incapable of enforcement and, unless we can find authority to proceed aside from it, the petition would be dismissed. The Congress had before it at the time of the enactment of the statute a claim against the Colville Indians for services rendered by certain attorneys. It recognized the justice of such a claim. The legal authority under which said attorneys had previously appeared had expired; they were relegated entirely to special legislation for relief. The Congress granted the relief, the special statute was passed, and notwithstanding the reference to an agreement as to distribution of the judgment the general language of the whole statute is sufficiently comprehensive to embrace, as it was clearly intended to do, the claims of “ all attorneys who have rendered services to said Indians in the matter of their said claim.” No attention appears to limit the adjudication to persons signatory to the agreement mentioned. The adjudication intended was to include and cover the whole transaction. The jurisdiction granted extended to the entire scope of the subject-matter referred, and to all parties interested therein.
While the jurisdictional statute contains many inconsistencies and upon its face is decidedly ambiguous, still it is not so worded as to prevent the elimination of meaningless and nonenforceable clauses and leave sufficient authority upon which the court can adjudicate and determine the real controversy. However, in following the conclusions set forth above, we are confronted with another contention, put forth by the defendants. The findings disclose that the only valid contract between the Indians and any attorney or attorneys had expired. The prosecution of their claim subsequent to May 12, 1904, was entirely without authority; claimants were volunteers, and the question arises, Does the jurisdictional statute repeal pro tanto section 2103, E. S.; or, is the *520 question of a legal liability to pay attorney’s fees relegated by the act to this court ? In any event, can there be a recovery in the absence of a valid contract of employment? In the case of Lone Wolf v. Hitchcock (187 U. S., 553) the plenary power of the Congress over Indian tribes and Indian property was decided. The question of authority to create a liability for the payment of an obligation upon the part of Indian tribes by the Congress is now at rest. While the jurisdictional act does not create a positive liability, it does confer judicial power and authority upon this court to ascertain the question of liability, and enforce the same, if any such is found to exist. The court is vested with discretion as to consideration of contracts of employment in ascertaining the extent of compensation, and the silence of the statute with respect to any statutory agreements clearly indicates a legislative intention to refer the whole matter to this court for adjudication and determination, irrespective of section 2103, E. S. If it were not intended to repeal fro tanto section 2103, E. S., the passage of the jurisdictional statute was unnecessary. Section 2103 provides as follows:
“ Sec. 2103. No agreement shall be made by any person with any tribe of Indians, or individual Indians not citizens of the United States, for the payment or delivery of any money or other thing of value, in present or in prospective, or for the granting or procuring any privilege to him, or any other person in consideration of services for said Indians relative to their lands, or to any claims growing out of, or in reference to, annuities, installments, or other moneys, claims, demands, or thing, under laws or treaties with the United States, or official acts of any officers thereof, or in any way connected with or due from the United States, unless such contract or agreement be executed and approved as follows:
“ ‘ First. Such agreement shall be in writing, and a duplicate of it delivered to each party.
“ ‘ Second. It shall be executed before a judge of a court of record, and bear the approval of the Secretary of the Interior and the Commissioner of Indian Affairs indorsed upon it.
“ ‘ Third. It shall contain the names of all parties in interest, their residence and occupation; and if made with a tribe, by their tribal authorities, the scope of authority and the reason for exercising that authority .shall be given specifically.
*521 “ ‘ Fourth. It shall state the time when and place where made, the particular purpose for which made, the special thing or things to be done under it, and, if for the collection of money, the basis of the claim, the source from which it is to be collected, the disposition to be made of it when collected, the amount or rate per centum of the fee in all cases; and if any contingent matter or condition constitutes a part of the contract or agreement, it shall be specifically set forth.
“ ‘ Fifth. It shall have a fixed limited time to run, which shall be distinctly stated.
“ 1 Sixth. The judge before whom such contract or agreement is executed shall certify officially the time when and place where such contract or agreement was executed, and that it was in his presence, and who are the interested parties thereto, as stated to him at the time; the parties present making the same; the source and extent of authority claimed at the time by the contracting parties to make the contract or agreement, and whether made in person or by agent or attorney of either party or parties.’
“ All contracts or agreements made in violation of this section shall be null and void, and all money or other thing of value paid to any person by any Indian or tribe, or any one else, for or on his or their behalf, on account of such services, in excess of the amount approved by the Commissioner and Secretary for such services, may be recovered by suit in the name of the United States in any court of the United States, regardless of the amount in controversy; and one-half thereof shall be paid to the person suing for the same, and the other half shall be paid into the Treasury for the use of the Indian or tribe by or for whom it was so paid.”
It will be observed that under the provisions of this statute resort to the courts and further legislation is unnecessary to obtain payment of fees as therein provided. In United States v. Crawford (47 Fed. Rep., 569) the court in construing a statute directly contrary to section 2103, R. S., and wherein the question of compensation for services to an Indian tribe was involved, held, that as to the special matter embraced within the jurisdictional statute, it was a repeal pro tanto of section 2103, R. S. It is quite true that repeals by implication are not favored in law. Yet absolute inconsistent provisions in two statutes wherein the later covers the whole subject-matter of the earlier statute and is repugnant thereto, must be intended to repeal the earlier statute. In view of the facts and circumstances surrounding the en *522 actment of the jurisdictional statute here questioned, we can not hold otherwise than that the Congress intended to reward claimants, if entitled to reward, upon the basis of a quantum meruit. (9 Decisions of the Comptroller, 264.) The legislative body, vested with supreme and absolute authority in the premises, recognized the existence of a claim against the defendants, and, sweeping aside all legal impediments to its assertion, afforded them a forum and a jurisdiction to hear, adjudicate, and determine their cause. The Congress have frequently so legislated; very recently, in the Watson Stewart case (43 C. Cls. R., —).
The contracts in the record, both those dealing with employment of attorneys, and the one respecting the division and distribution of any sum recovered among claimants, have been used as evidence. The contention so earnestly urged by a portion of the claimants respecting the binding force of the contract of distribution can not be sustained; the instrument is valuable as indicating the amount counsel signatory thereto were willing to accept, and likewise their proportionate share thereof; but it can not conclude the court in either respect, much less the defendant Indians who were never parties thereto. The instrument upon its face indicates its execution in anticipation of immediate appropriation by the Congress of the sum claimed as attorney fees, and does not embrace the claims of certain interveners under the jurisdictional statute. The court is at present considering a claim asserted against the Colville Indians. Any sum allowed is deducted from their trust funds and decreases proportionately their distributive share thereof. In arriving at the amount due and the distribution thereof the defendant Indians are entitled to consideration, and to know by what authority and in what manner their property has been disposed of. Congress could not have intended to limit and constrain, thereby prejudging the value of services to individuals, by requiring us to give certain claimants under the jurisdictional act a fixed pro rata share of the judgment of this court irrespective of the testimony in the record. The Attorney-General is by the express terms of the statute directed to appear for the Indian defendants; and if the defense so commanded is to be circumscribed in its extent and *523 embraces no right to challenge the justice of the claim, both in respect to the total amount claimed and individual distribution of the same, it would be perfunctory in character, and impose the performance of a well-nigh meaningless act. If the court should find some one party to this agreement entitled to no allowance, it would necessarily increase the amount to those allowed. If the testimony indicatéd the justness of a decreased allowance to one of the parties thereto, it would deprive the court of power to execute its judgment. In fact, the instrument invades the judicial power of the court. It submits an issue in nowise justiciable, is ex parte as respects the defendants, and, however extensive in morals as respects the assertion of claims in contravention thereto, has no standing in the present controversy which this court is obliged to respect.
No positive rule can be invoked as to the amount allowable to attorneys as fees for professional services; the quantum depends in each case upon the particular circumstances surrounding the transaction. Courts are not in anywise loath to decree ample compensation to those engaged in the prosecution and management of important controversies involving personal rights and private property. With respect to Indian rights and Indian property courts would be exceedingly reluctant in their duty if they failed to guard with jealous scrutiny the property of these dependent people. Claims asserted against their trust funds will not be unduly extended beyond the preponderance of testimony establishing the same; and while valid contracts are always enforceable both in law and equity, the court, in the absence of any such contracts, will predicate its judgment under the jurisdictional statute upon what the testimony in the record shows to be a fair and reasonable compensation for the services performed, keeping in mind the results accomplished and the quantum of property restored. Of course, contingent contracts of employment are entitled to full consideration where, as in this case, they are properly entered into, and the court will not fail to consider this feature of the case at bar.
It appears from the findings that the defendant Indians employed two attorneys to prosecute their claim; they fully expected, in the event of success, to reward said attorneys as *524 the contract expressed, and had the subject-matter of employment terminated successfully during the existence of the contract, the expense incident thereto would have been fixed and determined. Nothing appears in this record to show that had the same degree of labor and vigilance beeen continuously manifested during the earlier period of the contract’s existence, the results finally accomplished might not have been accomplished without the appearance of numerous additional attorneys and the incurrence of increased expense. It is apparent from the record that the claim now asserted, except as to a few claimants, had its inception in the Maish and Gordon contract, claimants agreeing with said attorneys to the contract to assist them in the prosecution of the claim therein mentioned, for a certain percentage of the fee allowed by its terms. We have now, as a result of the expiration of the Maish and Gordon contract, the claims of fourteen petitioners, each of whom alleges the performance of extensive labor and important contributions to the final result. The compensation asked for has increased to $225,000. That the defendant Indians ever contemplated such expense is incredible. That the prosecution of their claim required such an array of counsel is equally as incredible.
Much of the labor was coextensive and cumulative, especially so after the preparation of the brief by Marion Butler and his oral presentation of the cause to the committees of the Senate. The claimants who first appeared under the so-called McDonald contract added little that had not already been said and done prior to their appearance; their services were wholly cumulative and in most respects unnecessary. The issue involved, while quite momentous, .was equally as simple; it was direct and apparent, and when the history of the case had been fully brought forth and the law applicable thereto stated in brief and arguments, it is inconceivable how its repetition by numerous attorneys could materially aid in the final determination of the cause. That they performed some service will not be denied; the service contemplated, however, is not mere manual labor, but effective and resultant service, that which did or tended toward the accomplishment of the appropriation. Their coming into the case, and the circumstances under which they *525 came, not having been employed by the Indian defendants, and claiming a right to appear by virtue of contract never approved by the Secretary of the Interior, all suggest a voluntary projection of themselves upon the defendants at a time when their services were not indispensable and could not have materially assisted in the final disposition of the claim. The preparation of the case had been concluded, the briefs filed, the law examined, arguments made, and nearly, if not quite, all steps necessary to secure congressional action been taken prior to their appearance. The court under these circumstances is not disposed to appropriate any portion of the defendants’ property in payment of fees to these claimants.
The claims of Eichard D. Gwyir, James W. Edwards, A. M. Anderson, Samuel L. Magee, and Wendell Hall have likewise been dismissed; they have absolutely no claim against the defendants. What, if any, service was rendered by the Indian Protective Association does not appear, and no allowance is made therefor.
The court, after full consideration of the subject-matter, taking into account the attitude of and the valuable assistance rendered by the Department of the Interior, makes the following allowances:
To Benjamin Miller, administrator of the estate of Levi Maish, deceased-$6,000
To Hugh H. Gordon_14, 000
To Marion Butler- 20,000
To Josiah Vale_10, 000
To Daniel B. Henderson- 5, 000
To Heber J. May- 3,000
To Frederick G. Robertson- 2,000