# ROBERTSON *v.* GORDON, AND BUTLER AND VALE.

## APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 56.   Argued November 15, 1912.—Decided December 16, 1912.

A contract between attorneys for division of fees construed according to the definite meaning therein expressed.

*Quære* whether evidence to prove that there was a condition precedent to be performed before a contract took effect is admissible without a cross-bill.

Under a contract by attorneys for division of fees, if the attorney claiming did any work, whether more or less, there is no failure of consideration.

Where an agreement to leave a dispute as to amounts due under a contract to certain third parties provides that in case of their refusal to act no rights are affected, it is not permissible after such a refusal to bring in an attempt of another tribunal to adjudicate the claim.

The decision of a court that has no jurisdiction of the subject-matter or the parties is not *res judicata.*

An act of Congress directing the Court of Claims to determine the amount due attorneys for fees in an Indian litigation to be apportioned by certain attorneys named amongst all entitled to share as agreed among themselves, concerns only the amount and not the manner of distribution, *United States* v. *Dalcour*, 203 U. S. 408, and so *held* as to the act of June 21, 1906, c. 3504, 34 Stat. 325.

In this case a contract between two attorneys agreeing to share equally all fees received from an Indian litigation, held not to have been superseded by a decision that one was entitled to a much larger share than the other made by the Court of Claims under authority of an act of Congress authorizing it to determine the total amount due to all attorneys.

34 App. D. C. 539, reversed.

The facts, which involve the construction of a contract between attorneys for division of fees, are stated in the opinion.

*Mr. George H. Lamar,* with whom *Mr. George H. Patrick* was on the brief, for appellant.

*Mr. Henry E. Davis* for appellees.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit upon the following contract:

March 28, 1906.

This agreement made between F. C. Robertson and Hugh H. Gordon, witnesseth, that they shall share equally in all monies, appropriated by Congress, or allowed by the Interior Department which may accrue to said Gordon or said Robertson as attorney fees, growing out of the rendition of services to the Colville tribe of Indians, whether, allowed under the Maish-Gordon contract with said tribes, or on any other theory whatsoever, which said interest is to inure to either party, no matter in whose name such allowance is made. Both parties hereto to mutually labor to secure such allowance. Out of said Robertson's share he agrees to compensate R. D. Gwydir, by a reasonable compensation. The fees to be divided between said Robertson & said Gordon as herein provided shall be the net sum accruing to said Gordon, after settling with other attorneys under contracts heretofore made by said Gordon.

F. C. ROBERTSON.
HUGH H. GORDON.

There is also a claim upon a receipt signed by Gordon for $150 given by Robertson to Gordon "with which to pay expenses of trip to Washington, D. C., to look after the interests of Gordon Gwydir & Robertson in the matter. of the claim of the Indians, of the Colville Reservation against the U. S. Government. In case we succeed in collecting said claim, I agree that out of my share of the

profits, I will repay to said Robertson the said one hundred and fifty dollars." This was dated March 21, 1906, a few days earlier than the one first set forth.

By an act of June 21, 1906, c. 3504, 34 Stat. 325, 377, 378, a million and a half dollars were set aside by Congress for payment to the Indians in respect of the matter as to which the contract contemplated that services would be rendered to them. This statute also gave jurisdiction to the Court of Claims to render a judgment in favor of Butler and Vale, attorneys, for all services by all lawyers to the Indians; the amount to be paid out of the fund and to be apportioned among such lawyers by agreement among themselves. One fifth of the fund was paid over to the Indians under an act of March 1, 1907 (34 Stat. 1015, c. 2285). By an act of April 30, 1908, c. 153, 35 Stat. 70, 96, another fifth was directed to be paid over in pursuance of the statute of 1906. Meantime Butler and Vale had brought their suit in the Court of Claims and on May 25, 1908, the court gave judgment for a total of $60,000, of which it undertook to apportion $14,000 to Gordon and $2,000 to the plaintiff and appellant. 43 Ct. Cl. 497, 525. Thereafter in August, 1908, this bill was filed to secure payment out of the Indian fund and to establish the plaintiff's right to an equal share in the amount allotted to Gordon and a lien upon that amount for such share and for the $150 additional advanced as above set forth.

The controversy is wholly between Robertson and Gordon and it is unnecessary to refer to the other parties or other aspects of the case. The Maish-Gordon contract with the Indians had expired at the time of the agreement in suit and one of the defences is that the agreement was made upon the implied understanding and condition that Robertson should get a new contract with the Indians, which never came to pass. The other defences are that the matter is concluded by the judgment of the Court of

Claims, and that the agreement was superseded by two other agreements of a little later date, made when the matter of an appropriation for the Indians was pending in Congress. The first of these, dated April 3, 1906, and signed by Gordon, Robertson, Butler and Vale, was that the parties would submit to the Conference Committee of the Senate and House their respective claims for services, on a *quantum meruit*, and would abide by any award that should be made, "and in case no award shall be made the rights of the said parties shall remain unaffected." The second agreement dated April 12, 1906, between Marion Butler and R. W. Nuzum, each on behalf of himself and others not named, and Gordon and Robertson, was, that, provided the sum of $150,000 was allowed for payment of attorneys representing the Indians, $18,750 should be paid to Nuzum, $9,375 to Gordon, and $9,375 to Robertson; the remainder to be distributed by Butler as he elected. "Should the appropriation be less, then this agreement is to be the basis of distribution, sharing pro rata in such diminished sum, as the percentage is thereby diminished." Both of the last two defences seem to have been sustained by the Court of Appeals. 34 App. D. C. 539. See for details not material here *Butler* v. *Indian Protective Association*, 34 App. D. C. 284; *Gordon* v. *Gwydir*, 34 App. D. C. 508.

We are of opinion that the decree must be reversed and that the plaintiff is entitled to prevail. He starts with a contract of definite meaning. We perceive no ground for the doubt suggested in the court of first instance whether this agreement applies to a sum allowed by the Court of Claims. That court merely rendered certain the amount appropriated in terms by Congress out of the Indian fund. The argument that there was a condition precedent that a new contract should be made with the Indians, although no doubt such a contract was hoped and worked for, is irreconcilable with the instrument as it stands and ap-

pears to us not to be supported by the evidence, if that evidence were admissible without even a cross bill. *Sprigg* v. *Bank of Mount Pleasant*, 14 Peters, 201, 206. *Brown* v. *Slee*, 103 U. S. 828. *Simpson* v. *United States*, 172 U. S. 372. Again there is no doubt that Robertson did some work, whether more or less does not matter, so that there was no failure of consideration, according to the common rather inaccurate phrase. The only questions then are those concerning the effect of the later contracts and the decree of the Court of Claims.

The contract of April 3, proposing to submit all claims to the Conference Committee of the Senate and the House came to nothing, because the parties were informed that the Committee would not undertake to settle disputes between lawyers. By the express terms of this instrument therefore no rights were affected. It appears to us wholly unpermissible to bring in the subsequent attempt of the Court of Claims to adjudicate on a *quantum meruit* under an act of Congress that had not then been passed, as satisfying the conditions of the contract and binding the parties by virtue of the agreement if not by its own proper force.

The second contract was not made until nine days later—not improbably on the footing that the attempt of April 3 had failed. This contemplated a fixing of the attorneys' fees by Congress, again a different course from that taken by events. We see no reason for supposing that it was intended to change the relations between Robertson and Gordon. Primarily they were on one side of the agreement against Butler and associates on the other. Secondarily they were recognized as entitled to equal shares. Neither do we see reason for connecting this with the contract of April 3, as alternatively intended to cover the whole ground and to supersede that of March 28 in suit. These later contracts were on their face successive; the earlier one applied only to an event that has

not happened and the latter if applicable in any degree does not help the defendants' case. It is not to be supposed that it tacitly overrode the agreements of the parties in March to pay certain other lawyers out of their respective shares—and if not, the March contract remained on foot.

Finally as to the defence of *res judicata* the short answer is that the Court of Claims had no jurisdiction of either the subject-matter or the parties. Of course jurisdiction could not be claimed unless the special act of June 21, 1906, heretofore mentioned, conferred it. That act authorized the court to "render final judgment in the name of Butler and Vale . . . for the amount of compensation which shall be paid to the attorneys who have performed services as counsel on behalf of said Indians in the prosecution of the claim of said Indians for payment for said land, and in determining the amount of compensation for such services the court may consider all contracts or agreements heretofore entered into by said Indians with attorneys who have represented them in the prosecution of said claim, and also all services rendered by said attorneys for said Indians in the matter of said claim." It then directed that Butler and Vale should file a petition and that the Secretary of the Treasury should pay them the sum awarded on final judgment out of the sum appropriated for the Indians—payment to be in full compensation of all attorneys who had rendered services to the Indians in the matter, "the same to be apportioned among said attorneys by said Butler and Vale as agreed among themselves" provided that before any attorney having an agreement with Butler and Vale should be paid he should deliver to the Secretary of the Interior a discharge of all demands for services in the matter of this Indian claim.

Argument hardly can make the intent of the statute clearer. The question before the Court of Claims was the

amount and the whole amount to be deducted from an Indian appropriation before it should be paid over for the Indians by the United States. That necessarily concerned the United States. The manner in which the fund should be distributed did not concern it at all. Therefore it selected representatives of all claimants against the fund, ordered the sum deducted to be paid to them and transferred all claims outstanding against the Indians to the sum so paid over—a method familiar to our legislation. *United States* v. *Dalcour*, 203 U. S. 408, 422. The reference to contracts with the Indians merely permitted the court to take them into consideration in determining what was a fair total, without being governed by them, as for instance, the expired Maish-Gordon contract which allowed ten per cent; and to the same end other services were to be taken into account. But the act itself determined what parties were to be before the court, namely Butler and Vale, they being the only ones necessary for the object in view. The plaintiff could not have made himself a party if he had wanted to, and he did not want to and did not—he rightly understood that his claim was to be satisfied outside of the suit before the court. We do not think a discussion of the evidence necessary, although we think that the courts below mistook its effect. It is enough to say that the decree of the Court of Claims perhaps was not intended to have effect and certainly could not have effect in deciding the rights of the parties among themselves.

*Decree reversed.*

Mr. Justice Pitney was not present at the argument and took no part in the decision of this case.