Ralph W. DISNEY, Executor of the Last Will and Testament of Wesley E. Disney, Deceased, and Ida J. Rogers, Executor of the Last Will and Testament of Charles B. Rogers, Deceased, Plaintiffs-Appellees,

v.

Abraham N. PRITZKER, Jack N. Pritzker, Jay A. Pritzker, and Stanford Clinton, individually and as co-partners practicing law as Pritzker, Pritzker, and Clinton, Defendants-Appellants.

No. 16032.

United States Court of Appeals
Seventh Circuit.

Oct. 12, 1967.

Jay Erens, Chicago, Ill., for appellant.

John P. Hampton, Louis Linton Dent, Roger D. Doten, Chicago, Ill., for appellees.

Before SWYGERT, FAIRCHILD and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

In this diversity action, the estates of two deceased Oklahoma attorneys have sought a declaration of their right to legal fees pursuant to a 1955 contract with a Chicago law firm. The District Court held that the contract entitled the plaintiffs to 35% of fees awarded in a case decided by the Indian Claims Commission of the United States. This same ruling was extended to various other cases pending before that Commission.

The cases covered by the contract involved certain claims of two branches of the Delaware Nation of Indians. One branch of Delaware Indians joined the Cherokee Nation in northeastern Oklahoma and is termed Cherokee Delawares herein; the other branch settled in western Oklahoma and is known as the Absentee Delawares. Both sought compensation from the United States for ceded lands or, in a pair of cases (Dockets 72 and 298), a general accounting by the Government of its treaty obligations to the Delaware Indians.

In a contract approved in October 1947 by the Commissioner of Indian Affairs and the Department of the Interior, Wesley E. Disney and Charles B. Rogers, both residents of Oklahoma, were retained by the Cherokee Delawares to present claims against the United States before the Indian Claims Commission and courts. They were authorized to prosecute those claims to a final determination. The contract provided for a fee of 10% of the gross recovery and was to continue for ten years. The contract also provided that surviving counsel would be entitled to proceed with the claims.

Pursuant to their contract with the Cherokee Delawares, Disney and Rogers filed 7 claims with the Indian Claims Commission. The contract expired in October 1957. The Assistant Commissioner of Indian Affairs so advised Disney in January 1960. When he learned of its expiration, Mr. Disney attempted to renew the contract but died before a new contract could be executed.

Similarly, in a contract approved by the Commissioner of Indian Affairs in March 1950, the defendant law firm was retained to represent the Absentee Delawares with respect to their claims against the United States. This contract was extended until March 1965 and also provides for a fee of 10% of the sums recovered by the defendants. They have filed 6 claims on behalf of the Absentee Delawares. Most of the claims of both tribes were for the benefit of the entire Delaware Nation.

After the execution of these two contracts, a dispute developed as to whether both the Cherokee Delawares and the Absentee Delawares had a right to file claims and participate in recoveries for lands taken by the United States. The Indian Claims Commission decided that each group was entitled to maintain claims. After the Indian Claims Commission's decision on the question of the claimants' standing was affirmed by the Court of Claims,[1] Disney, the estate of Rogers,[2] and the defendants negotiated the contract which is the subject of this lawsuit. The contract was executed by Disney and Rogers' Executrix in August 1955 and by defendants on September 1 of that year and was approved by the Commissioner of Indian Affairs about two months thereafter.

In one of the contractual recitals, the parties stated that the best interests of the Cherokee Delawares and the Absentee Delawares would "be advanced and better protected by a unified presentation" of their claims pending before the Indian Claims Commission. The contract then provided in pertinent part:

"I.

"The parties of the second part [defendant firm] assume full responsibility for the preparation and prosecution of the cases listed in Schedules A and B through all trial and appellate stages, Provided that if contrary to present expectation, a conflict should arise between the interests of the Absentee Delaware Tribe and those of the [Cherokee] Delaware Tribe, the parties of the second part shall call upon Wesley E. Disney, Esq. to represent the interests of the latter tribe and said Wesley E. Disney, Esq. shall then discharge that responsibility, and Provided, further that said Wesley E. Disney, Esq. shall have the right to appear at any time in any of the aforementioned cases and introduce such evidence and make such argument on be-

half of the [Cherokee] Delaware Tribe as he may deem proper.

"II.

"The parties of the second part shall assume the cost of the preparation and prosecution of the aforementioned cases to the extent to which such preparation and prosecution take place under their responsibility.

"III.

"Wesley E. Disney, Esq. agrees to make available to the parties of the second part the results of his research of the cases and the parties agree to consult with each other fully as to the manner in which the cases are to be presented.

"IV.

"In case an award is made, all items of expenditure in connection with travel not reimbursed out of the judgment shall be reimbursed out of the total fee allowed in the cases before division of that fee under the formula provided by this agreement.

"V.

"Attorney fees resulting from any awards in the aforementioned cases shall be shared by the attorneys in the portion of 35% payable to the parties of the first part [Disney and the Rogers estate] and 65% payable to the parties of the second part, payable in separate checks by the Treasurer of the United States."

Appended as schedules to the contract was a list of six cases filed by the Cherokee Delawares before the Indian Claims Commission and another six filed by the Absentee Delawares before that Commission.

At the time this contract was executed, Disney was the sole attorney of record for the Cherokee Delawares and the defendant firm was the sole attorney of record for the Absentee Delawares. Disney died on March 26, 1961, and a year

---

1. Delaware Tribe of Indians v. United States, 128 F.Supp. 391, 130 Ct.Cl. 782 (1955).

2. Rogers died on December 7, 1954.

thereafter the defendant firm was retained by the Cherokee Delawares. Defendants continue to represent both groups of Delaware Indians.

At the time the 1955 agreement was signed, defendant Clinton knew that Disney had previously suffered a stroke, leaving him crippled with an impediment of speech. Disney was only able to carry on ordinary business conversations in the mornings and had difficulty of recollection and expression. Prior to the 1955 contract, Disney and Rogers had expended a great deal of work on behalf of the Cherokee Delaware claims. After the 1955 agreement, Disney performed few services and the defendants and their associate, Louis Rochmes of the Washington, D.C., Bar, did most of the work in processing the claims of both groups of Delaware Indians.

The chief question for our determination is whether the 1955 agreement between defendants, Disney and the Rogers estate expired in October 1957, when Disney's contract with the Cherokee Delawares expired.

The District Court held that the 1955 contract between the defendants, Disney and the Rogers estate is still in effect, and that the plaintiffs are entitled to 35% of the one fee already allowed [3] and of future fees that may be awarded in the other nine pending cases included in said contract.[4] We approve this construction of the 1955 contract.

In our opinion, it was not a condition of the 1955 contract between defendants and Disney and the Rogers estate that the 1947 contract of Disney and Rogers with the Cherokee Delawares remain in effect. The 1955 contract was drafted by experienced lawyers. Knowing that Indian contracts were to have "a fixed limited time to run" (25 U.S.C. § 81 Fifth), certainly both sides realized that their respective retainers would terminate. If the parties intended the 1955 contract to expire if either side lost its contract with the Delaware Indians, the contract should have so provided. The general rule is that where the parties have made an express contract, the court should not find a different one by implication unless the evidence so requires. 3 Corbin on Contracts (1960 ed.) § 564. No evidence has been called to our attention that the parties intended the 1955 contract to require both sides to maintain their Delaware Indian retainers.[5] Therefore, we would not be justified in rewriting the contract to include such a requirement. Abingdon Bank & Trust Co. v. Bulkeley, 390 Ill. 582, 591–592, 62 N.E.2d 447, 451–452 (1945); Western Illinois Oil Company v. Thompson, 26 Ill. 2d 287, 291, 186 N.E.2d 285, 287 (1962).[6]

An argument similar to defendants' was rejected in Robertson v. Gordon, 226 U.S. 311, 33 S.Ct. 105, 57 L.Ed. 236, where the Supreme Court declined to sustain the defense that a legal fee division contract was dependent upon the obtaining of a new contract to represent the Colville Tribe of Indians, the previous contract having expired two years previously. Mr. Justice Holmes stated (at pp. 314–315, 33 S.Ct. at p. 106):

"The argument that there was a condition precedent that a new contract should be made with the Indians, although no doubt such a contract was hoped and worked for, is irreconcilable with the instrument as it stands, and appears to us not to be supported by the evidence, if that evidence were admissible without even a cross bill."

---

3. Defendants have been paid 65% of the fee awarded. The Indian Claims Commission ordered the Treasurer of the United States to retain the other 35% pending the outcome of this suit.

4. We note with approval that the District Court has retained jurisdiction to grant such relief as may be appropriate in the event of a material change in circumstances.

5. Cf. Great Lakes & St. Lawrence Transportation Co. v. Scranton Coal Co., 239 F. 603, 607–608 (7th Cir. 1917).

6. In this diversity action, Illinois law would seem to govern. Oakes v. Chicago Fire Brick Co., 388 Ill. 474, 479, 58 N.E.2d 460, 462 (1944). However, no Illinois cases have been cited that would conflict with the views expressed in the federal cases discussed in this opinion.

The Court declined to add an implied condition to the contract in suit, holding that, as here, the contract itself had a definite meaning and therefore should not be judicially altered.

Similarly, in Maddux v. Bottineau, 34 App.D.C. 119 (1909), plaintiff sued upon another legal fee division contract. At the time the fee contract was executed, defendant O'Grady was assigned plaintiff's legal retainer contract with the Turtle Mountain Band of Chippewa Indians. The Indian contract was never approved by the Department of the Interior. The Court rejected the defense that the Indian contract had not been approved by the Government, and that a new Indian contract had not resulted during the October 1901 Indian council in North Dakota. The Court stated that O'Grady and Maddux had been retained by the Chippewa Band through Bottineau's efforts (at p. 129). Here defendants eventually represented the Cherokee Delawares through their connection with Disney.

Thus the continuing existence of a contract of employment with the Indians or the obtaining of a new employment contract was not considered to be a condition precedent to the fee division agreements in the *Robertson* and *Maddux* cases. We adhere to those precedents.

Moreover, after the contract between the Cherokee Delawares and Disney and Rogers terminated in 1957, Disney and the defendants continued to render legal services involving various Cherokee Delaware claims against the United States. After the Assistant Commissioner of Indian Affairs notified Disney in January 1960 that his 1947 contract had expired in 1957, the Cherokee Delawares adopted a resolution authorizing an extension of the contract. In January 1961, the Bureau of Indian Affairs wrote Mr. Disney that a formal contractual extension of the 1947 contract would be necessary. Disney died in March 1961 before a new contract could be executed. However, the Chairman of the Cherokee Delawares' Business Committee considered the 1955 contract between Disney, the Rogers estate and defendants as remaining in effect despite the expiration of Disney's and Rogers' 1947 retainer contract with the Cherokee Delawares. These circumstances are akin to those involved in Gordon v. Gwydir, 34 App.D.C. 508 (1910). There one of the defenses was that a retainer contract with the Colville Tribe had expired, so that the subsequent, related contract between the plaintiffs and defendants would not permit recovery. In disapproving this defense, the Court of Appeals pointed out that lawyers Maish and Gordon continued to represent the Indians after their retainer contract had expired, and that the Indians did not declare the contract at an end but continued to receive the services and acquiesced in this "practical extension of the contract" (at p. 515). *Gordon* too reinforces our conclusion that the 1955 contract did not require Disney to maintain his retainer by the Cherokee Delawares.

It should also be observed that the substantial benefit flowing to defendants from the 1955 contract was the right to handle the claims of the Cherokee Indians and collect fees therefor. It was through the 1955 contract that defendants first became involved with the Cherokee Delawares, later enabling them to become Disney's successor. Therefore, even though the Disney and Rogers contract with the Cherokee Delawares formally expired in 1957, defendants were not hurt thereby, so that it would be manifestly unfair to discharge them from their obligations under the 1955 contract. They have received what they bargained for in 1955: cessation of friction with Disney, an agreement on fee division, and representation of the entire Delaware Nation. Although defendants undertook to perform most of the legal work after 1955, the allotment to them of 65% of future fees took this into account. Under the circumstances, defendants have not persuaded us that an amendment of the 1955 contract is compelled.

Defendants apparently also contend that their 1955 contract with Disney

and the Rogers estate terminated in any event upon Disney's death in 1961. The 1955 contract was executed after Rogers had died and Disney was incapacitated by a stroke. One of the parties to the contract was Rogers' Executrix. These factors alone show that defendants did not contemplate further substantial legal work from the Disney-Rogers side. Under the contract defendants assumed "full responsibility for the preparation and prosecution" of the 12 cases listed in the schedule to the contract. This is another indication that the 1955 contract was not to cease upon Disney's death. Otherwise the contract would have spelled out the rights of survivors, as in defendants' and Disney's and Rogers' retainer contracts with the Delawares. Disney's life expectancy was, at best, tenuous, so that he would hardly enter an agreement forfeiting his fees if he should not survive. We agree with the District Court's interpretation that the 1955 contract was not conditioned upon Disney's survival.

Relying on certain Indian statutes, the defendants also argue that Disney's and Rogers' representatives should not recover fees in any dockets in which the decedents performed no services. However, defendants have performed or will perform services on all decided or pending dockets covered by the 1955 contract and, therefore, will be entitled to fees where they obtain recovery for the Delaware Nation. Here the plaintiffs are not suing the Delaware Nation for fees. Instead, they are seeking to hold defendants to their promise to share 35% of all the fees with Disney and the Rogers estate. The Indian Claims Commission's standards of fee eligibility are irrelevant to this private contractual dispute. Cf. McKenzie v. Irving Trust Company, 323 U.S. 365, 369, 65 S.Ct. 405, 89 L.Ed. 305. There is nothing in the statutes upon which defendants rely that restricts or prohibits fee division agreements between attorneys.

Finally, defendants contend that Canon 34 of the Canons of Professional Ethics permits the splitting of fees among lawyers only when "based upon

a division of service or responsibility." However, of the 12 dockets covered by the 1955 contract and either decided or still pending, all affect the entire Delaware Nation; ten involve consideration for ceded land. Viewing these dockets realistically as a unit on which Disney, Rogers and defendants all worked, there is nothing unethical in permitting Disney's and Rogers' estates to recover the agreed portion of the fees.

Affirmed.