Ida J. ROGERS, Administratrix of the Estate of Charles B. Rogers, Deceased, et al., Plaintiffs,

v.

Rodney J. EDWARDS and James R. Fitzharris, Defendants.

No. 5–73–Civil–128.

United States District Court,
D. Minnesota,
Fifth Division.

July 9, 1975.

F. Paul Thieman, Jr., Tulsa, Okl., and Paul R. Hamerston, Duluth, Minn., for plaintiffs.

Marvin J. Sonosky, Washington, D. C., and James F. Bodin, Duluth, Minn., for defendants.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

At issue in this declaratory judgment action between heirs of two deceased lawyers and other lawyers is the interpretation of a contract between the two groups of lawyers providing for sharing of attorneys' fees following successful prosecution of claims before the Indian Claims Commission.

Diversity of citizenship and requisite amount in controversy establish jurisdiction. The case was tried to the court, largely on the pleadings and admitted facts. Extensive briefs have been submitted.

The contract involved was executed in August 1953 between two Oklahoma lawyers, Charles B. Rogers and Arthur B. Honnold ("Rogers" group) and six other lawyers, two of whom, the only survivors of the group, are the named defendants here ("Edwards" group). By this contract the Rogers group assigned to the Edwards group for professional handling certain enumerated claims they had previously filed with the Indian Claims Commission on behalf of Indian clients and provided for the apportionment of legal fees between them. All signatories to the contract were experienced practitioners before the Indian Claims Commission.

Both members of the Rogers group are deceased and their heirs seek a declaration that they are entitled to receive the share of attorneys' fees awarded by the Indian Claims Commission which Rogers and Honnold were entitled to receive under the contract. Defendants claim plaintiffs are not entitled to receive any portion of attorneys' fees earned after the deaths of Rogers and Honnold.

The question is largely one of interpretation of the contract. Among other things, the contract provided that the Edwards

group would perform the major part of the legal work with such assistance as Honnold, "in his discretion" would be able to render and that the two groups of attorneys would divide "the net attorneys' fees received as a result" of successful prosecution or settlement of the enumerated claims. The agreement applied to renewal of contracts with the Indian clients. The final paragraph of the contract provided:

This agreement shall be binding upon and shall inure to the benefit of the estates or personal representatives of the parties hereto, without death effecting any change in the division of fees herein provided for.

This contract was approved by the Commissioner of Indian Affairs as required by statute, 25 U.S.C. § 84. The contracts which the Rogers group had with their Indian clients authorized such an assignment.

■ We must interpret the contract as the parties wrote it and are not free to make a new one for them. The contract was executed August 10, 1953. Rogers died in December 1954 and Honnold died in May 1955. The probability of death before successful completion of the proceedings before the Indian Claims Commission was an apparent purpose for including the paragraph quoted above providing that the benefits of the contract would inure to the heirs and personal representatives of the parties. The wording is clear and the intention manifest. The contract reflects a joint venture between the two groups of attorneys and the death of Rogers and Honnold did not terminate the right of plaintiffs to receive the benefits of the contract. *Disney v. Pritzker*, 385 F.2d 572 (7th Cir. 1967); *Senneff v. Healy*, 155 Iowa 82, 135 N.W. 27 (1912).

■ Defendants urge that the contract was unethical or void as contrary to public policy but cite no pertinent persuasive authority for this contention. In fact this contention was considered and rejected by the court in *Disney, supra,* at 577. Rogers and Honnold had worked on the cases for many years prior to 1953 and were entitled to receive compensation for themselves or their heirs. The contract was fair on its face. Its execution was authorized by the agreements Rogers and Honnold had with their Indian clients. It received the approval of the Indian Claims Commission and the Commissioner of Indian Affairs.

The court declares that the death of Rogers and Honnold did not terminate plaintiffs' entitlement to fees under the August 1953 contract.

A second issue is directed to the proper method of dividing attorneys' fee awarded by the Indian Claims Commission's order of August 9, 1973.

Among the cases assigned to the Edwards group by the contract was a claim, assigned docket number 58 by the Indian Claims Commission, filed by Rogers and Honnold in 1950 on behalf of Ottawa and Chippewa Indians of Michigan seeking additional compensation for lands ceded to the United States under treaties of July 6, 1820 (1395 acres) and March 28, 1836 (13.5 million acres). Members of the Edwards group had filed a claim in 1949, assigned docket number 18E, on behalf of the Bay Mills Indian Community, et al., to recover for the same lands ceded under the same treaties. On motion of defendant Fitzharris, claiming to act on behalf of the claimants in both dockets, the Indian Claims Commission consolidated these actions in 1959. Following this consolidation the dockets were treated as a single case by all parties until an award was made. Joint briefs were filed and all evidence was introduced on behalf of all plaintiffs.

In 1972, over twenty years after the claims were filed, the Indian Claims Commission awarded the claimants in dockets 58 and 18E jointly, on behalf and for the benefit of the Chippewa and Ottawa Nations of Indians, the sum of $10,109,003.55. Shortly thereafter, Edwards, attorney of record in docket 18E, and Fitzharris, attorney of record in docket 58, petitioned the Indian Claims Commission for attorneys' fees asking that $505,450 be awarded attorneys of record of docket 18E and that the same amount be awarded attorneys of record of docket 58. About six months later defend-

ants filed with the Indian Claims Commission an "Amended Joint Petition of Attorneys of Record for Award of Attorneys' Fee." In this amended petition, defendants asked that $1,010,900 be awarded to them jointly. On August 9, 1973, the Indian Claims Commission awarded that sum jointly to defendants on behalf of all contract attorneys having an interest in the fee. 31 Ind.Cl.Comm. 73, Def.Ex.BB.

In this court, defendants urge that the $1,010,900 fee should be divided equally between dockets 58 and 18E. Therefore, they conclude, only one half of the fee is subject to division between the parties under the contract. However, the premise upon which this conclusion is based is without factual support in the record. It appears to us that the entire fee is governed by the terms of the contract.

The contract provided that, subject to the approval of the Indian Claims Commission, all claims filed by members of the Edwards group on behalf of Chippewa Indians involving, *inter alia*, lands ceded to the government under the 1836 treaty, be consolidated with claims listed in the contract. As experienced Indian claims attorneys, the parties to this contract should have known that the consolidation of claims seeking compensation for the same parcels of land would not increase the compensation received by Indian claimants or the resulting attorneys' fees. If a consolidated claim were successfully prosecuted, only one award would be made. Therefore, only one attorneys' fee would be awarded to the lawyers representing the successful Indian claimants. The government's liability was based on the number of acres ceded under the treaties in question, not on the number of dockets consolidated for trial before the Indian Claims Commission. The obvious import of this mandatory consolidation provision was that the entire attorneys' fee awarded for the successful prosecution or settlement of any consolidated action was to be governed by the contract.

■ Defendants offer three arguments in support of their contention. First, they suggest that since docket number 18E was not among the claims enumerated in the contract, the parties did not intend it to be subject to the contract. The contract listed only claims filed by Rogers and Honnold which were to be assigned to the Edwards group. Therefore, since docket number 18E had been filed by members of the Edwards group there was no reason to include it in the contract. The fact that the parties included the mandatory consolidation provision further negates this contention.

Second, the defendants contend that since docket number 18E antedated the contract, the parties would have specifically referred to it in the contract if they intended it to be subject to the consolidation clause. On the contrary, as it can be assumed that the Edwards group understood the nature and extent of the claims assigned to them by this contract and of the claims they had previously filed with the Indian Claims Commission, the fact that 18E was not specifically excluded evinces the parties intent that it be subject to the consolidation provision. Nor can it be maintained that this consolidation provision only applies to claims filed by the Edwards group after the effective date of the contract. The contract plainly says that "*any claims* filed before the Indian Claims Commission" by members of the Edwards group seeking to recover for lands ceded under the 1836 treaty shall be consolidated with the claims listed in the contract. (Emphasis supplied.)

Third, the defendants contend that the entire fee cannot be subject to the terms of the contract because to do so would violate rights of twelve attorneys (not parties to this lawsuit) who allegedly have an interest in docket number 18E but were not parties to the contract. To make the entire $1,010,900 fee subject to the contract, it is urged, would be to bind these absent lawyers to a contract to which they are strangers.

■ The record does not clearly indicate the relation between these twelve absent lawyers and the defendants. Although the defendants raised this point in brief, they did not make matters any clearer. However, it appears that the defendants and the absent lawyers were joint adventurers.

The joint enterprise was the prosecution of the claim represented by docket number 18E. It is an elementary principle of law that each joint adventurer is both principal for himself and agent for his associates when acting within the scope of the enterprise. 48 C.J.S. *Joint Adventures* § 5c, p. 823 (1947). It is also without question that the act of one joint adventurer binds his associates. *Id.* § 13.

It is obvious that the defendants were in charge of the prosecution of the 58–18E case. Among other things, they made all necessary motions and filed all necessary briefs. As attorneys of record they, in effect, acted as agents for all persons interested in this case. The Indian Claims Commission recognized this when it awarded the fee "for distribution by them (Edwards and Fitzharris) to those entitled to participate in the sharing of the fee. . . ." 31 Ind.Cl.Comm. 73, 85, Def.Ex.BB.

 It is clear that defendants were acting within the scope of the joint enterprise when they, by requesting the Indian Claims Commission to consolidate dockets 58 and 18E, subjected docket 18E to the contract. Shortly before the consolidation, the 18E claimants, and hence their lawyers, were in a precarious position. The government had moved the Indian Claims Commission to dismiss the 18E plaintiffs because they lacked standing to present claims under the treaties of 1820 and 1836. In effect the government contended the claimants were not descendents of the Indians who were parties to the treaties in question. However, about two years after the consolidation, the Indian Claims Commission denied the government's motion because, *inter alia*, the docket 58 claimants, admittedly proper parties, did not contest the right of the 18E claimants to join in the suit. The Indian Claims Commission reasoned that the degree of the government's liability was fixed by the amount of land in question not by the number of claimants, and therefore the government lacked standing. Thus, at the time, this consolidation could have been viewed by the 18E lawyers as a method of saving their lawsuit. Therefore they con-

sented to the consolidation and subjected their rights in the potential 18E fee to the contract. We conclude that, even without their express consent to the consolidation, the interests of the absent lawyers are subject to this contract because they are bound by the actions of defendants, their co-adventurers.

The court declares that the entire $1,010,900 fee awarded by the Indian Claims Commission's order of August 9, 1973, is subject to the terms of the contract.

It is declared that plaintiffs are entitled to share in attorneys' fees earned after the deaths of Rogers and Honnold and that the entire fee awarded by the Indian Claims Commission's order of August 9, 1973 is subject to division according to the contract. These expressions shall constitute the court's findings of fact and conclusions of law.