THOMAS F. BURNS v. LEO R. VALENE.

214 N. W. 2d 686.

February 1, 1974—No. 43990.

*Thomas F. Burns & Associates* and *Thomas F. Burns,* pro se, for appellant.

*Feinberg, Mirviss, Meyers, Schumacher & Malmon* and *Arnold I. Feinberg,* for respondent.

PER CURIAM.

Plaintiff, Thomas F. Burns, appeals from the judgment in favor of defendant, Leo R. Valene, in an action by Burns, an attorney at law, for the reasonable value of his services performed under a contingent fee contract. Valene seeks review of the judgment denying his counterclaim against Burns for negligently conducting the trial of defendant's case.

Valene was involved in a car accident in 1965. He retained Ellis Bursell, a duly licensed attorney (now deceased), to represent him in a claim for damages against the other driver. Their fee arrangement was a contingent fee contract for one-third of the amount recovered.

Bursell commenced the action in 1965 and was the only attorney of record for 4 years. In August 1969, apparently because of failing health, Bursell suggested to Valene that another lawyer try the case. Valene agreed. Bursell then contacted Burns, who officed in the same building as Bursell and Valene. The referral agreement provided that Bursell and Burns were to divide the legal fee, if any, one-half to each.[1] Valene claims he had no discussion with Burns as to fees.

---

[1] Attention is called to Code of Professional Responsibility, Canon 2, DR 2—107 (27B M.S.A., 1973 Cumulative Pocket Part, p. 25), which states:

"(A) A lawyer shall not divide a fee for legal services with another

In preparing for trial, Burns asked Valene if he had had any other prior accidents, prior injuries, or prior litigation. Valene's answer was that he had been in some minor "shake-ups" in "fender benders" resulting in "some minor injuries of insignificance."

The case came to trial in April 1970. Valene testified that he had suffered no injuries of the type for which he was now claiming damages. On cross-examination, 28 files were produced involving various lawsuits in which Valene was a party. Valene admitted that he had been a party in prior suits involving injuries similar to those which he now claimed.

After a conference with the judge and opposing counsel, Burns told Valene that (1) he was destroyed as a plaintiff; (2) he might be liable for perjury; (3) a $500 settlement offer had been made and he should accept it; (4) that Burns would not accept a fee based on the settlement amount and would bill Valene for the reasonable value of his services. Valene then said he did not inform Burns of the prior accidents because he was afraid Burns would not take the case.

Burns billed Valene for $2,787.50 for legal services and $56.25 for out-of-pocket expenses. Valene refused to pay and Burns commenced this action. Valene counterclaimed for Burns' negligence in handling the case. After trial in Hennepin County Municipal Court, both claims were dismissed and judgment was entered against both parties.

From the record it appears that Bursell and Valene were

---

lawyer who is not a partner in or associate of his law firm or law office, unless:

(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.

(2) The division is made in proportion to the services performed and responsibility assumed by each.

(3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client.

"(B) This Disciplinary Rule does not prohibit payment to a former partner or associate pursuant to a separation or retirement agreement."

friends, shared office space, and engaged in real estate promotions together. Bursell had represented Valene in prior accident claims. As previously stated, Burns had his office in the same building. In the 9 months Burns handled the case, he answered interrogatories, raised the ad damnum clause of the complaint, and prepared for trial.

The trial court found that Valene and Bursell had agreed to a contingent fee contract; that Burns was bound by the contingent fee contract between Valene and Bursell; and that Burns was chargeable with whatever knowledge Bursell had concerning Valene and any prior litigation in which he might have been involved. The trial court found, in effect, that Burns had a contract with Bursell and that Burns assumed the representation of Valene subject to the Bursell-Valene contract.

Burns asserts that he had a one-third contingent fee contract with Valene but that Valene's acts in not disclosing material facts constituted fraud which gave Burns the right to terminate or to rescind the contingent fee contract and recover the reasonable value of his services. Valene's counterclaim is based on a claim that Burns was negligent in the manner in which he conducted the trial.

We agree with the trial court's finding that Burns was bound by the Bursell-Valene contingent fee contract and that Burns' contract was with Bursell. It is well known that a party has an unrestricted right to contract with his attorney as to compensation for services and the manner and measure of payment. Minn. St. 549.01; Eriksson v. Boyum, 150 Minn. 192, 184 N. W. 961 (1921). An express contingent fee contract may be oral or written. Wood, Fee Contracts of Lawyers, § 9. Contingent fee contracts have been sanctioned in this state in the absence of unconscionability. Holt v. Swenson, 252 Minn. 510, 90 N. W. 2d 724 (1958); Hollister v. Ulvi, 199 Minn. 269, 271 N. W. 493 (1937). See, also, 7 Am. Jur. 2d, Attorneys at Law, § 214; 7 C. J. S., Attorney and Client, § 186. A contingent fee contract is formed and treated in the same manner as any other contract. Holt v.

Swenson, *supra.* In the instant case, there was an express contingent fee contract between Bursell and Valene. It was never Valene's intention to enter into two separate contingent fee contracts, nor did he at any time reasonably convey that impression to Burns. See, Holt v. Swenson, *supra;* Restatement, Contracts, § 20; Corbin, Contracts (1 Vol. ed.) § 106.

Even if we assume the correctness of Burns' contention that he had a contingent fee contract with Valene, he can rescind and recover on a theory of quantum meruit only if he can show justifiable reliance on an intentionally misrepresented material fact.

Dispositive of Burns' claim is the determination of whether there was reliance sufficient to warrant rescission of a contract for fraud. We hold there was not.

This is an unusual case in that an attorney is claiming he was defrauded by his client. The treatises and textbooks are filled with cases on overreaching perpetrated by the attorney on the client. 2 Dunnell, Dig. (3 ed.) § 700. The courts recognize the attorney-client relationship as one in which the client is usually at a disadvantage in bargaining position.

In Minnesota, to prove a prima facie case of fraud, it must be shown that there was a false representation by a party of a past or existing material fact susceptible of knowledge, made with knowledge of the falsity of the representation, or made as of his own knowledge without knowing whether it was true or false, with intention to induce another to act in reliance thereon, and that the representation caused the other party to act in reliance thereon to his pecuniary damage. Hafner v. Ritzinger, 256 Minn. 196, 97 N. W. 2d 839 (1959).

Burns several times asked Valene about prior accidents, prior injuries, and prior litigation. The reason Burns gave for this was that he felt Valene's appearance was suggestive of a dishonest man. It is difficult to accept the claim that Burns was misled or that he justifiably relied on Valene's misrepresentations when the facts were well known to Burns' cocounsel, Bursell, and Burns

obviously had reasons of his own to distrust Valene. Portions of the cross-examination of Burns are particularly revealing.[2]

[2] "Q. So all during this nine month period you were representing Mr. Valene, Mr. Bursell and Mr. Valene were both at hand? In other words, it wasn't—there wasn't any difficulty in your communicating with either?

"A. No.

"Q. You said that you had asked Mr. Valene on a number of occasions whether he had previous accidents or previous injuries. That's true, isn't it?

"A. That's quite true.

"Q. And is this customary or is this something you ask all your personal injury clients?

"A. It is routine as far as I am concerned in the initial interview of the client to take pretty much a complete medical history and I usually even start with childhood diseases to see if there would be any possibly subsequent medical occasions.

"Q. You said you had done it repeatedly. I am wondering whether there is something about this case or this client that made you ask this same question over and over again?

"A. Yeah, his appearance.

"Q. What do you mean by that?

"A. His appearance. I had a suspicion about Mr. Valene and I felt more comfortable when I was reassured from time to time.

"Q. You had a suspicion that he might have been involved in other cases, is that what you are saying?

"A. I had a suspicion that he might be a dishonest man. I think—

"Q. Can you tell me—

"A. Not really specific—

"Q. What caused you to have that suspicion?

"A. Just his appearance, perhaps his manner of speech. I don't think I can identify the ideology of my state of mind on the job subject. I felt better as I reassured myself from time to time.

"Q. Well, at any time did you—did you at any time call Mr. Bursell and express this doubt that you had in mind?

"A. No, I don't think so.

"Q. You knew that he had officed with Mr. Bursell for some time past?

"A. I told you, no. I don't think I did. I don't think I did call him, no.

Burns admits that he knew of the one-third contingent fee contract between Valene and Bursell; that he had not expressed any doubts to Bursell; and that he had failed to investigate court records relative to any prior litigation in which Valene might have been involved.

Burns could not close his eyes to the realities of the situation. Simply questioning Valene over and over again was not an approach designed to resolve Burns' obvious uncertainty or to allay his fears or suspicions. Receiving repeated assurances from one who is believed to be dishonest provides no comfort and serves as an inadequate basis for any justifiable reliance.

We hold that Burns should be held to the contingent fee contract and that Valene's counterclaim is without merit.

This ruling is in no sense to be understood as indicating approval of the actions of Valene. On the contrary, his actions in this matter are condemned. Nor does this court mean to imply that situations may not arise in which an attorney may well have a valid and enforceable claim against a client. We are merely saying that based upon these facts this is not such a case.

---

"Q.    You didn't call Mr. Bursell?

"A.    That's what I said, yes.

"Q.    Did you yourself or anybody at your direction ever take the time to check the court records to see if there had ever been any litigation involving Mr. Valene before?

"A.    No, indeed no.

"Q.    In spite of your doubt and suspicion you never bothered with that?

"A.    The reassurances which I obtained from Mr. Valene were always such sufficient [sic] and they were satisfactory. If I ever come to the point where I felt that he was absolutely untruthful in his representations to me as to his medical history, I wouldn't go and conduct a big fat examination about the whole thing. I would throw his file out of the office and to that point I never came.

"Q.    Well, but you had some suspicion based upon his looks apparently? Was it based on any conduct of his?

"A.    He simply had a suspicious—I can't tell you anything more about the ideology of it."

The decision of the trial court is affirmed.

Mr. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the submission, took no part in the consideration or decision of this case.