**Jack D. TIBBETTS, Appellant,**

v.

**CROSSROADS, INC., Thomas Kelly, Respondents.**

No. C1–87–421.

Court of Appeals of Minnesota.

Sept. 1, 1987.

Karla R. Wahl, Minneapolis, for Jack D. Tibbetts.

Barbara D'Aquila, Hart, Bruner, O'Brien & Thornton, P.A., Minneapolis, for Crossroads, Inc.

Ellen Maas, Arthur, Chapman, Michaelson & McDonough, P.A., Minneapolis, for Thomas Kelly.

Heard, considered and decided by LESLIE, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

LANSING, Judge.

Jack Tibbetts brought an action for intentional infliction of emotional distress, negligent infliction of emotional distress, violation of right to privacy, and breach of contract against Crossroads, Inc., a private adoption agency. During the discovery process, Crossroads refused to disclose information in Tibbetts' adoption application file. The trial court denied Tibbetts' motion to compel disclosure of the file and granted Crossroads' motion for summary judgment on the underlying claims. We affirm.

## FACTS

On April 30, 1982, Jack Tibbetts submitted an application to adopt a child through Crossroads, an adoption agency licensed by the State of Minnesota. Cross-

roads accepted Tibbetts' application and began investigating his suitability as a prospective adoptive parent.

A Crossroads caseworker interviewed Tibbetts and developed an informational profile. Tibbetts, 45, is a former schoolteacher who is currently employed as a computer programmer. He has a long history of active community service, including work with the Boy Scouts and the "Friend of a Child" project, which is similar to the Little Brothers and Sisters program. In the profile submitted to the Crossroads board of directors, the caseworker highly recommended Tibbetts as a prospective adoptive parent.

The Crossroads board approved Tibbetts as an adoptive parent in August 1982. Tibbetts paid an adoption fee and the process continued until January 1983, when Crossroads received a call from Thomas Kelly, an officer with the Burnsville Police Department.

Kelly informed Crossroads that he had arrested Tibbetts on sexual misconduct charges in 1977 and a jury had convicted him of criminal sexual conduct in the second and fourth degrees. Kelly gave them the citation to Tibbetts' appeal, *State v. Tibbetts*, 281 N.W.2d 499 (Minn.1979), in which the supreme court reversed because the trial court improperly instructed the jury. Tibbetts received a new trial, but the State chose not to reprosecute.

Kelly also told Crossroads that Tibbetts had been investigated for sexual abuse charges against his "Little Brother." The boy apparently made statements to a Hennepin County social worker about how he sometimes slept with Tibbetts when frightened or sad and showered with him when they went camping. Hennepin County officials investigated the charges, but found no evidence of sexual abuse and no charges were filed.

In the application and interviews with Crossroads, Tibbetts did not disclose either the prior arrest or the Hennepin County investigation. After receiving that information, Crossroads confronted Tibbetts, who provided an explanation of the incidents. Crossroads suspended efforts to place a child with Tibbetts, pending further investigation. On June 24, 1983, Crossroads notified Tibbetts that the factual allegations against him raised unresolved questions of his suitability as a parent. For that reason, and because Tibbetts had not disclosed this material information, Crossroads terminated his adoption application.

Tibbetts brought this suit against Crossroads and Thomas Kelly, alleging breach of contract, negligent and intentional infliction of emotional distress, and violation of his right to privacy. Crossroads objected to Tibbetts' interrogatories and request for production of documents, claiming the information was privileged under the adoption statute. After an *in camera* review of the requested material, the trial court denied Tibbetts' motion to compel discovery on the ground that he had not shown a need for the files which outweighed the important considerations of confidentiality.

Tibbetts moved for reconsideration, and Crossroads countered with a motion for summary judgment. The trial court heard both motions and granted Crossroads' motion. Tibbetts appeals.

### ISSUES

1. Did the trial court err in granting respondent's motion for summary judgment?

2. Did the trial court err in refusing to compel respondent Crossroads to disclose the requested materials to appellant?

### ANALYSIS

#### I

In determining whether there are any genuine issues of material fact and whether the trial court erred in its application of the law, Tibbetts' claims for violation of his right to privacy, for negligent or intentional infliction of emotional distress, and for breach of contract require separate consideration.

A. Violation of right to privacy

■ Tibbetts' privacy claim is not well articulated. He claims Crossroads invaded

his right to privacy by talking about him to Officer Kelly and attempts to draw legal support for the claimed violation from the penumbra of privacy rights recognized in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Although *Roe v. Wade* stands for the proposition that certain personal rights fall within the right of privacy, nothing in the holding of this case guarantees a person the unqualified right to adopt a child.

■ If, on the other hand, Tibbetts' claim is for the tort of public disclosure of private facts, the claim still fails. Tibbetts alleges no widespread publication by Crossroads of private matter "which would be highly offensive and objectionable to a reasonable person of ordinary sensibilities." W. Prosser & P. Keeton, *The Law of Torts* § 117 (5th ed. 1984). Even if Minnesota recognized a cause of action for invasion of privacy, Tibbetts has not asserted facts which support a prima facie case. *See Hendry v. Conner*, 303 Minn. 317, 226 N.W.2d 921 (1975). The trial court properly applied the law in granting summary judgment on this claim.

### B. Intentional Infliction of Emotional Distress

■ To establish the tort of intentional infliction of emotional distress, Tibbetts must prove (1) the conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) he suffered emotional distress; and (4) the distress was severe. *Hubbard v. United Press International, Inc.*, 330 N.W.2d 428, 438–39 (Minn.1983). The type of outrageous conduct contemplated by this tort is conduct "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* (quoting *Haagenson v. National Farmers Union Property & Casualty Co.*, 277 N.W.2d 648, 652 (Minn. 1979)).

We find no error in the court's decision that, as a matter of law, the facts were insufficient to sustain this cause of action. Any facts to prove that he suffered emotional distress and the severity of the distress were within Tibbetts' control, but

were not alleged. Moreover, Crossroads' decision not to place an adoptive child in Tibbetts' home is not conduct that intolerably surpasses boundaries of decency.

### C. Negligent Infliction of Emotional Distress

■ In Minnesota, a plaintiff may not recover damages for negligent infliction of emotional distress unless the plaintiff shows that the defendant's action resulted in either physical injury or physical danger to the plaintiff. *Langeland v. Farmers State Bank of Trimont*, 319 N.W.2d 26, 31 (Minn.1982). An exception to this rule allows recovery of damages for emotional distress in actions founded on direct invasions of a plaintiff's rights: defamation, malicious prosecution, or other willful or malicious conduct. *Id.; see State Farm Mutual Automobile Insurance Co. v. Village of Isle*, 265 Minn. 360, 367–68, 122 N.W.2d 36, 41 (1963).

■ Any facts to demonstrate the requisite injury were within Tibbetts' control, but none were presented. The record is void of facts to support a claim under either the general rule or the exception. Crossroads simply received information on Tibbetts' background. There was no publication or any evidence of willful or malicious conduct by the agency. The court properly decided that, as a matter of law, Tibbetts' claim lacked merit.

### D. Breach of Contract

Crossroads construes the contract as an agreement to use its best efforts to place an appropriate child with Tibbetts if their investigation showed that Tibbetts was a suitable adoptive parent. Tibbetts interprets the contract differently, alleging that Crossroads agreed to locate a child for him to adopt and requesting specific performance of that agreement. However, even accepting Tibbetts' construction of the contract, that contract would not be enforceable.

An important tenet of our society is the freedom to negotiate our own agreements. However, Minnesota has long recognized that

public policy requires that freedom of contract remain inviolate except only in cases when the particular contract violates some principle which is of even greater importance to the general public. *Rossman v. 740 River Drive*, 308 Minn. 134, 136, 241 N.W.2d 91, 92 (1976) (citing *James Quirk Milling Co. v. Minneapolis & St. L.R. Co.*, 98 Minn. 22, 23, 107 N.W. 742 (1906)). In this case we must balance the competing interests of freedom of contract and the public policy which mandates that an adoption agency act in the best interests of the child.

■ The adoption statutes, Minn.Stat. §§ 259.21 et seq., contemplate that a licensed adoption agency must conduct a thorough investigation to ascertain whether a prospective parent is fit to adopt a child and whether the adoption would be in the best interests of the child. By law, Crossroads must act in the best interests of the child and cannot automatically place a child with anyone who pays a fee.

■ The child's welfare is the paramount concern in adoptions, and every other interest must give way in the event of a conflict. *In re Jaren's Adoption*, 223 Minn. 561, 569, 27 N.W.2d 656, 661 (1947). Because state law affords children special protection, *In re Pratt*, 219 Minn. 414, 422, 18 N.W.2d 147, 152 (1945), Crossroads' investigation was appropriate. Tibbetts' contract claim—that Crossroads must provide a child for adoption—cannot withstand the strictures of public policy. Tibbetts' version of the contract is unenforceable as a matter of law.

There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)). Any evidence which Tibbetts might have presented to support his version of the contract and a subsequent breach would not change the outcome of this case. The court correctly determined that no reasonable juror could find Tibbetts' version of the contract enforceable.

## II

■ Tibbetts also claims the trial court erred in refusing to grant his motion to compel the production of documents from Crossroads during the discovery process.

At the time of Tibbetts' motion to compel, the statute governing disclosure of adoption agency records provided:

All reports and records of * * * [a] child placing agency bearing on the suitability of the proposed adoptive home and the child to each other shall be confidential, and the contents thereof shall not be disclosed either directly or indirectly to any person other than * * * a judge of the court having jurisdiction of the matter, provided, however, that a judge of the court having jurisdiction of the matter may disclose any such report or record to a party to the proceedings or the party's counsel when such report or record disapproves the granting of the adoption petition.

Minn.Stat. § 259.27, subd. 3 (1986).

Crossroads is a private, nonprofit adoption agency licensed by the State of Minnesota. In addition to the adoption statute, Crossroads is regulated by state rules for adoption agencies which require all authorized child-placing agencies to maintain records of the adoption, including all relevant legal documents, pertinent agreements or contracts, and pertinent correspondence. Minn.R. 9560.0180, subp. 1. All adoption records are confidential and permanent under the rules and must be retained under a protected record system. Minn.R. 9560.0180, subp. 3. At the time of Tibbetts' motions to compel, Crossroads' records were completely confidential and could be disclosed only by court order.

In considering whether to disclose the materials, the court balanced Tibbetts' interest in obtaining the information against the societal interest in preserving the confidentiality of an adoption agency's records. The court concluded that Tibbetts had not shown that his need to see the records

outweighed the value of confidentiality and refused to order disclosure.

 The trial court has broad discretion to grant or deny discovery requests, *see Baskerville v. Baskerville*, 246 Minn. 496, 507, 75 N.W.2d 762, 769 (1956), and its decision will not be overturned absent an abuse of discretion. *Connolly v. Commissioner of Public Safety*, 373 N.W.2d 352, 354 (Minn.Ct.App.1985). While discovery rules are to be liberally construed to serve the interests of justice, *Larson v. Independent School District No. 314*, 305 Minn. 358, 362, 233 N.W.2d 744, 747 (1975), the rules expressly declare that privileged matter is nondiscoverable. Minn.R.Civ.P. 26.-02. We find no abuse of discretion in the court's refusal to compel Crossroads to disclose its records.

Several months after summary judgment was entered for Crossroads, the legislature amended Minn.Stat. § 259.27, subd. 3, to read:

(a) The contents of all reports and records of the commissioner of human services, county welfare board, or child placing agency bearing on the suitability of the proposed adoptive home and the child to each other shall not be disclosed either directly or indirectly to any person other than the commissioner of human services or a judge of the court having jurisdiction of the matter, except as provided in paragraph (b).

(b) A judge of the court having jurisdiction of the matter shall upon request disclose to a party to the proceedings or the party's counsel any portion of a report or record that relates only to the suitability of the proposed adoptive parents. In this disclosure, the judge may withhold the identity of individuals providing information in the report or record. When the judge is considering whether to disclose the identity of individuals providing information, the agency with custody of the report or record shall be permitted to present reasons for or against disclosure.

Minn.Stat. § 259.27, subd. 3 (1987) (amendatory language underscored).

 The general rule in Minnesota is that amended statutes can be applied to cases pending on appeal if they involve public rights and are clearly intended by the legislature to apply retroactively. *Holen v. Minneapolis-St. Paul Metropolitan Airports Commission*, 250 Minn. 130, 137, 84 N.W.2d 282, 287 (1957); *see* Minn.Stat. § 645.21 (1986) (presumption against retroactive application of statutes).

We need not reach the issue of whether the amendments to Minn.Stat. § 259.27, subd. 3, apply to public rights or were intended to apply retroactively because each claim in Tibbetts' complaint was properly dismissed by the trial court as a matter of law. The material which Tibbetts seeks would not create a genuine issue of material fact on the causes of action which he alleges in his complaint.

### DECISION

The judgment of the trial court is affirmed.