BARNA, GUZY & STEFFEN, LTD., Respondent,

v.

Richard A. BEENS, Appellant.

No. C8–95–1479.

Court of Appeals of Minnesota.

Dec. 26, 1995.

Review Denied Feb. 27, 1996.

Timothy D. Kelly, Wendy A. Snyder, Kelly & Berens, P.A., Minneapolis, for respondent.

Eric J. Magnuson, Sarah E. Morris, Rider, Bennett, Egan & Arundel, Minneapolis, for appellant.

Considered and decided by SCHUMACHER, P.J., and HUSPENI and WILLIS, JJ.

## OPINION

. SCHUMACHER, Judge.

Appellant Richard A. Beens challenges the district court's grant of a motion for partial summary judgment in favor of respondent Barna, Guzy & Steffen, Ltd. (the Barna firm), arguing that a shareholder separation agreement violates public policy because it involves fee-splitting among attorneys without client consent and restrains a client's right to select counsel. We affirm.

## FACTS

Beens was a shareholder in the Barna firm until April 1993, when he left to join the law firm of Felhaber, Larson, Fenlon & Vogt (the Felhaber firm). Nine clients whom Beens represented at the Barna firm under contingent fee agreements terminated their agreements with the Barna firm and requested that Beens continue to represent them. One of these clients was Marilyn Wyatt Gay, who had worked as Beens's legal secretary. Gay had retained Beens to represent her in a medical malpractice action on behalf of her son, Wayne Burrell. Beens in turn retained attorney James Schwebel in Burrell's action, who would then share in the contingency fee. Gay consented to the arrangement. Settlement efforts failed and litigation was commenced.

At the time Beens left the Barna firm, the firm had incurred $6,743 in attorney time and $373.46 in expenses on Burrell's case. At the time of Beens's departure, the work done on the Burrell case included the appointment of Gay and her daughter as Burrell's guardians, as well as some preliminary investigation. Beens did all of the work on the Burrell case, except for 13 hours.

Pursuant to section 11 of the Barna firm's shareholder agreement with Beens, the firm required Beens to pay it 50% of all fees eventually recovered in contingent fee cases he handled while Beens was at the Barna firm. The agreement provided:

In the event any Shareholder no longer engaged in the Private Practice of Law with the Company reestablishes any attorney-client relationship with any client of the Company whose case is being handled by the Company as a Contingent Fee Case on the date when such Shareholder is first no longer engaged in the Private Practice of Law with the Company, such Shareholder shall be obligated to pay the Company the following:

(a) A sum calculated by multiplying the contingent fee received by such Shareholder by fifty percent (50%) as to each part or facet of the Contingent Fee Case in which such Shareholder is involved in representing such a client

and receives a fee as a Contingent Fee Case from such representation.

The Barna firm sued to enforce the agreement. Both parties moved for partial summary judgment on the issue of whether the agreement is enforceable. The district court granted the Barna firm's motion and certified the judgment as final under Minn. R. Civ. P. 54.02.

## ISSUES

1. Is section 11 of the shareholder agreement contrary to public policy because it violates Minn. R. Prof. Conduct 1.5?

2. Does section 11 of the shareholder agreement unlawfully restrain a client's right to select counsel of choice, violating Minn. R. Prof. Conduct 5.6?

## ANALYSIS

An interested person to a written contract "may have determined any question of construction or validity arising under the * * * contract * * * and obtain a declaration of rights" and status under the contract. Minn.Stat. § 555.02 (1994). On appeal from summary judgment, this court determines whether there are any issues of material fact and whether the district court correctly applied the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). This court reviews a question of law de novo. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

1. Beens argues that section 11 of the shareholder agreement is contrary to public policy because it violates Minn. R. Prof. Conduct 1.5. A contract violating law or public policy is void. *Independent Sch. Dist. No. 877 v. Loberg Plumbing & Heating Co.,* 266 Minn. 426, 434, 123 N.W.2d 793, 799 (1963). When a contract offends a value of great public importance, the principle of freedom of contract must give way. *Rossman v. 740 River Drive,* 308 Minn. 134, 136, 241 N.W.2d 91, 92 (1976); *Tibbetts v. Crossroads, Inc.,* 411 N.W.2d 535, 538–39 (Minn.App. 1987).

Rule 1.5 governs attorney fees. Subdivision (e) provides:

A division of fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;

(2) the client is advised of the share that each lawyer is to receive and does not object to the participation of all the lawyers involved; and

(3) the total fee is reasonable.

Minn. R. Prof. Conduct 1.5(e). The rule further provides: "This Rule does not prohibit payment to a former partner or associate pursuant to a separation agreement." Minn. R. Prof. Conduct 1.5(f). Beens argues that subdivision (f) cannot apply in this case because its plain language refers to "payment *to* a former partner or associate," and the shareholder agreement here calls for payment *from* a former partner to the firm. *See id.* (emphasis added).

The clear policy behind subdivision (f) is to encourage law firms to carefully draft agreements in order to prevent disputes when partners or associates leave a firm. *See La Mantia v. Durst,* 234 N.J.Super. 534, 561 A.2d 275, 279 (App.Div.1989) ("Disputes such as this are best averted by properly drafted partnership and associate agreements."), *cited with approval in In re L-tryptophan Cases,* 518 N.W.2d 616, 620–21 (Minn.App. 1994). If such agreements cannot be enforced, law firms will face instability because attorneys will be motivated to leave firms when they receive lucrative contingent fee cases, and attorneys will be encouraged to battle over clients. Furthermore, the enforcement of freely-made contracts is itself in the public interest.

2. Beens next argues that the shareholder agreement restrains a client's right to select counsel of choice, violating Minn. R. Prof. Conduct 5.6. Under the rule:

A lawyer shall not participate in offering or making:

(a) a partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship * * *.

*Id.* Beens contends that the shareholder agreement's provision calling for a 50/50 split of contingent fees serves as an financial disincentive to a departing partner, thus restricting the former partner's future practice, as well as the client's right to choose a lawyer.

Shareholder agreements that explicitly limit an attorney's right to practice law have been struck down. *See, e.g., Dwyer v. Jung*, 133 N.J.Super. 343, 336 A.2d 498, 501 (Ch. Div.) (agreement restricting partner from doing business with client of another partner for five years void as against public policy), *aff'd*, 137 N.J.Super. 135, 348 A.2d 208 (App. Div.1975). Courts have also invalidated termination agreements that implicitly restrict attorneys' practice by imposing financial disincentives to those who compete with their former firms. *See, e.g., Jacob v. Norris, McLaughlin & Marcus*, 128 N.J. 10, 607 A.2d 142, 148–49 (1992) (invalidating shareholder agreement prohibiting departure compensation to attorneys who provide services to firm clients within year after departure); *Anderson v. Aspelmeier, Fisch, Power, Warner & Engberg*, 461 N.W.2d 598, 601–02 (Iowa 1990) (holding that law firm violated professional rules of conduct when it terminated payments for former partner's equity interest after he continued to serve firm clients); *Leonard & Butler v. Harris*, 279 N.J.Super. 659, 653 A.2d 1193, 1196, 1199 (App.Div.1995) (invalidating employment agreement requiring departing partner to turn over entire contingent fee in exchange for previous hourly rate because it interferes with lawyer-client relationship and client's free choice of counsel).

The focus of our decision is the client. As the court stated in *Jacob:*

> The history behind [rule 5.6] and its precursors reveals that the [rule's] underlying purpose is to ensure the freedom of clients to select counsel of their choice, despite its wording in terms of the lawyer's right to practice.

607 A.2d at 146. The situation here is distinguishable from one in which a separation agreement effectively penalizes an attorney for continuing to represent certain clients. Under the shareholder agreement, Beens will still receive 50% of the contingency fee. As the Barna firm points out, the agreement cannot serve as a financial disincentive because Beens would have received less than 50% of the contingency fee if he had remained at the firm. Because there is no incentive for him to terminate his representation of Gay on the Burrell case, Gay's interests are not affected. The agreement does not violate Minn. R. Prof. Conduct 5.6.

Beens urges this court to apply the factors set forth in *L-tryptophan* to allocate attorney fees in a contingency case. 518 N.W.2d at 621. In that case, there was no agreement among the attorneys on how to split fees with departing attorneys. *Id.* at 619. It is not necessary to resort to the *L-tryptophan* factors when there is an enforceable agreement.

### DECISION

The shareholder agreement does not result in improper fee-spitting and does not restrain a client's right to select counsel.

**Affirmed.**