**Christine Hollender CHRISTENSEN, et al., Appellants,**

v.

**Brad C. EGGEN, Respondent.**

**No. C5–96–2275.**

Court of Appeals of Minnesota.

April 29, 1997.

Review Granted July 10, 1997.

---

Jan Stuurmans, Law Offices of Jan Stuurmans, P.A., Minneapolis, for appellants.

Brad C. Eggen, Law Offices of Brad C. Eggen, Minneapolis, pro se respondent.

Considered and decided by AMUNDSON, P.J., and SHORT and HARTEN, JJ.

## OPINION

SHORT, Judge.

This dispute arises from an alleged fee-splitting agreement between attorneys Fred

Hollender, now deceased, and Brad Eggen. Hollender's widow and assignee of his claims, Christine Hollender Christensen, seeks a declaration that Hollender and Eggen entered into a binding and enforceable contract, pursuant to which Hollender was entitled to one-third of Eggen's attorney fees in a medical malpractice action. The trial court granted Eggen summary judgment, finding Christensen's claim was barred by the doctrine of election of remedies and the alleged fee-splitting agreement violated public policy as expressed by the Minnesota Rules of Professional Conduct, and was therefore unenforceable. On appeal, Christensen argues the trial court misapplied the law.

## FACTS

In 1989, James Koch (client) contacted transactional attorney Hollender concerning a potential malpractice action arising out of the medical treatment of the client's son. As he had done in the past, Hollender contacted trial specialist Eggen regarding the case. After both lawyers met with the client's family, Eggen informed the client by letter that he would be conferring with Hollender on the lawsuit and possibly using the resources of Hollender's firm. Several days later, Hollender wrote Eggen, offering his assistance on the case and confirming his entitlement to a referral fee of one-third of Eggen's fees, should their client prevail.

Over the course of 1989 and 1990, Eggen copied Hollender on all correspondence to the client and medical providers. In one letter sent in late 1989, Eggen again advised the client of Hollender's involvement in the case and stated his intention to meet with the client and Hollender to discuss litigation strategy. The record does not reflect whether such a meeting took place. Although Eggen's retainer agreement with the clients did not mention Hollender, Eggen's transmittal letter stated:

> As we have discussed, Fred Hollender will be * * * separately compensated from the attorneys' share of any recovery. In other words, his involvement will not result in additional costs to you.

Eggen served summonses and complaints in December 1990.

On June 12, 1992, Hollender wrote Eggen requesting an update on the malpractice litigation, noting he had received no correspondence from Eggen for approximately six months. Hollender died unexpectedly on June 30, 1992, approximately 18 months after commencement of the lawsuit. The malpractice case went to trial in Anoka County in August 1994, resulting in a jury verdict of $1,390,914, and generating $360,000 in contingent attorney fees. Eggen successfully defended the verdict on appeal under a separate fee agreement. After trial, Eggen offered to pay Hollender's widow an unspecified amount allegedly "proportionate" to Hollender's involvement in the case, provided the client agreed to the arrangement. Eggen refused to honor the one-third referral fee agreement.

To pursue a claim against Eggen for one-third of his contingent fee in the malpractice action, Christensen initially filed an attorney's lien in the malpractice case in Anoka County District Court. However, to permit disbursement of the jury award to the client, the parties entered a stipulation providing the defendants and "all other firms, persons, associations, and corporations" would be discharged from all liability under the attorney's lien upon deposit into escrow of $132,-120.85, the contested portion of the fees. The Anoka County trial court later dismissed the attorney's lien and ordered the escrowed funds paid to Eggen, expressly reserving the issue of whether a valid contract existed between Eggen and Hollender.

Next, Christensen commenced the present action, seeking a declaration that Eggen and Hollender entered a binding, enforceable contract for a one-third contingent referral fee. On Eggen's motion, Anoka County transferred this declaratory judgment action to Hennepin County District Court. The trial court denied Eggen's motion to dismiss for failure to state a claim, but granted Eggen summary judgment, finding Christensen's claim was barred by the doctrine of

election of remedies, and the fee-splitting arrangement was violative of public policy and therefore unenforceable. The trial court also awarded sanctions of $20,000 against Christensen, her attorneys, and her deceased husband's law firm. Eggen seeks additional attorney fees of $13,500 on appeal.

## ISSUES

I.  Did the trial court err in concluding the doctrine of election of remedies barred Christensen's declaratory judgment action?

II. Did the trial court err in finding the fee-splitting agreement was unenforceable as a matter of law?

III. Did the trial court abuse its discretion in awarding Eggen attorney fees?

## ANALYSIS

On appeal from a grant of summary judgment, this court determines whether the trial court erred in its application of the law and whether any genuine issues of material fact exist. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990); *see* Minn.R.Civ.P. 56.03 (setting forth trial court standard for summary judgment). To withstand summary judgment, the nonmoving party must produce specific facts that create an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We do not defer to a trial court's analysis of purely legal issues. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

### I.

■ The doctrine of election of remedies restricts a party from pursuing two or more inconsistent remedies. *Hardware Mut. Cas. Co. v. Ozmun*, 217 Minn. 280, 287, 14 N.W.2d 351, 355 (1944). The purpose of the doctrine is not to prevent recourse to a potential remedy, but to prevent double redress for a single wrong. *First Nat'l Bank v. Flynn*, 190 Minn. 102, 106–07, 250 N.W. 806, 808

(1933), *cited in Kosbau v. Dress*, 400 N.W.2d 106, 110 (Minn.App.1987). A party is bound by an election when the party has pursued the chosen remedy to a determinative conclusion, procured advantage therefrom, or subjected the party's opponent to injury thereby. *Flynn*, 190 Minn. at 107, 250 N.W. at 808.

■ Christensen argues the trial court erred in concluding the attorney's lien she asserted against the client's damage award barred this declaratory judgment action under the doctrine of election of remedies. We agree. On the basis of Christensen's stipulated release of all parties from liability arising from the attorney's lien, the trial court dismissed the lien and ordered the escrowed fees paid to Eggen. In so doing, the trial court declined to determine the validity of the fee-splitting agreement and expressly reserved that issue for the instant declaratory judgment action. Thus, Christensen's attorney's lien action did not reach a determinative conclusion, and there was no resultant advantage to Christensen or injury to Eggen. *Cf. Middelstadt v. City of Minneapolis*, 147 Minn. 186, 186, 179 N.W. 890, 891 (1920) (disallowing attorney's lien enforcement action because attorney's entitlement to fees was fully presented, considered and rejected in previous action). Additionally, no danger exists that Christensen will obtain double redress for her claim. *Cf. First Bank Nat'l Ass'n v. Northside Mercury Sales & Serv., Inc.*, 458 N.W.2d 424, 428 (Minn.App.1990) (refusing to allow prosecution of attorney's lien action where attorneys had successfully pursued inconsistent remedy of mortgage foreclosure and satisfied fee obligation), *review denied* (Minn. Sept. 28, 1990). Given these facts, the trial court erred in concluding the doctrine of election of remedies barred Christensen's declaratory judgment action on the fee-sharing contract.

### II.

■ Minnesota's public policy favors freedom in the negotiation of contracts. *Rossman v. 740 River Drive*, 308 Minn. 134, 136,

241 N.W.2d 91, 92 (1976); *see Tibbetts v. Crossroads, Inc.*, 411 N.W.2d 535, 538 (Minn. App.1987) (recognizing freedom of contract as important societal tenet). Public policy requires that freedom of contract remain inviolate except when a particular contract violates a principle of even greater importance to the general public. *Rossman*, 308 Minn. at 136, 241 N.W.2d at 92; *see Independent Sch. Dist. No. 877 v. Loberg Plumbing & Heating Co.*, 266 Minn. 426, 434, 123 N.W.2d 793, 799 (1963) (holding courts must enforce declared purpose of contract, if within scope of lawful contractual objectives, but recognizing contract violating law or public policy is void); *see, e.g., Malmin v. Minnesota Mut. Fire & Cas. Co.*, 552 N.W.2d 723, 728 (Minn. 1996) (finding consent-to-sue clause that released insurer from liability for judgment absent insurer's written consent was contrary to purposes of no-fault automobile insurance act and void); *Bunia v. Knight Ridder*, 544 N.W.2d 60, 62–63 (Minn.App.1996) (refusing to enforce newspaper's exculpatory agreement with newspaper carrier as violative of public policy, noting parties' disparity in bargaining power), *review denied* (Minn. May 9, 1996).

■ In determining whether an agreement violates public policy, courts employ a balancing test, weighing public policy favoring freedom of contract against policy favoring observance of the duty allegedly breached by a contracting party. *Rossman*, 308 Minn. at 136–37, 241 N.W.2d at 92; *see, e.g., Tibbetts*, 411 N.W.2d at 539 (balancing competing interests of freedom of contract and policy mandating adoption agencies act in best interests of children). A value of great public importance may outweigh the countervailing public policy favoring freedom in negotiating contracts. *Barna, Guzy & Steffen, Ltd. v. Beens*, 541 N.W.2d 354, 356 (Minn. App.1995), *review denied* (Minn. Feb. 27, 1996); *see Rossman*, 308 Minn. at 136–37, 241 N.W.2d at 92 (noting policy favoring observance of extremely important duty may be stronger than policy favoring freedom of contract).

■ Eggen argues his referral fee agreement with Hollender violates public policy because it does not conform precisely to the Minnesota Rules of Professional Conduct provision for splitting fees between attorneys of different firms. Those rules authorize the sharing of fees if:

(1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;

(2) the client is advised of the share that each lawyer is to receive and does not object to the participation of all the lawyers involved; and

(3) the total fee is reasonable.

Minn.R.Prof. Conduct 1.5(e). The comments to rule 1.5 recognize that fee-splitting agreements, often made between a referring lawyer and a trial specialist in contingent fee cases, facilitate the association of more than one lawyer in a matter in which neither alone could serve the client as proficiently. *Id.* 1.5 cmt.

The referral agreement between Hollender and Eggen complied, at least in part, with Minn.R.Prof. Conduct 1.5(e). The record demonstrates: (1) Hollender met with the client, evaluated internal reports from an expert witness, referred the medical malpractice case to Eggen, and consulted on the case; (2) by letter to Eggen, Hollender confirmed his entitlement to a referral fee of one-third the amount of Eggen's fees; (3) Eggen advised the client in writing that he would be consulting with Hollender on the case, and that he and Hollender would share the attorneys' portion of any recovery; (4) the client did not object to the fee arrangement or Hollender's participation in the litigation; and (5) the total fees to the client were reasonable. Due to Hollender's untimely death and the trial court's staying discovery of Eggen's files, the limited record before us does not reveal whether Hollender or Eggen disclosed to the client orally or in correspondence the percentage of fees each attorney was to receive under the agreement. Therefore, a genuine fact issue exists as to whether the fee-sharing agreement complied with Minn.R.Prof. Conduct 1.5(e).

Although the fee agreement may not have satisfied each provision of the fee-splitting rule, an attorney's violation of the rules of professional conduct does not give rise to a civil cause of action. *See L & H Airco, Inc. v. Rapistan Corp.,* 446 N.W.2d 372, 380 (Minn.1989) (holding professional rules do not provide basis for civil liability). Neither, we conclude, may such a violation act as a complete defense in a civil suit. *See* Minn.R.Prof. Conduct Scope (recognizing professional rules do not augment substantive legal duties or extradisciplinary consequences). While the professional rules may evidence public policy, Eggen has not shown each technical requirement to state a value of great public importance, outweighing the public policy favoring contractual freedom. The substance of the fee agreement between Eggen and Hollender did not violate public policy; the parties entered into the agreement for the lawful purpose of securing legal representation for the client, the client was so advised, and the splitting of fees is permitted under the law and the disciplinary rules. *See* Minn.R.Prof. Conduct 1.5(e) (providing for fee sharing between lawyers of different firms); *Rogers v. Edwards,* 413 F.Supp. 933, 935 (D.Minn.1975) (rejecting argument that fee-sharing agreement between attorneys violated public policy), *aff'd,* 547 F.2d 1056 (8th Cir.1977). In addition, the arrangement did not result in excessive fees or other injury to the client. If the two attorneys' agreement failed to comply fully with the professional rules, their violations provide a valid basis for invoking attorney disciplinary measures. *See* Minn.R.Prof. Conduct Scope (noting rules provide structure for regulating conduct through disciplinary agencies). However, an otherwise-valid referral fee agreement does not violate public policy merely because of a minor technical deficiency with respect to the professional rules.

Moreover, permitting Eggen to invoke the ethical rules as a defense to enforcement of the referral fee agreement would do a disservice to the intent of the rules.

[T]he purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule.

Minn.R.Prof. Conduct scope; *accord L & H Airco,* 446 N.W.2d at 380 (recognizing professional rules are not intended to run to personal benefit of attorney's adversaries). These comments would hold less force if rule 1.5(e) were being invoked to vindicate the interest of a client kept in the dark about a fee arrangement. *See In re Disciplinary Action Against Prueter,* 359 N.W.2d 613, 616 (Minn.1984) (noting professional rules are intended to protect public). However, the admonishment is especially compelling here, where the violation of the fee-splitting rules, if any, is attributable as much to Eggen as to Hollender. We will not permit Eggen to invoke the professional rules to profit from his own ethical breach. Under these circumstances, the trial court erred in concluding a failure to comply with Minn.R.Prof. Conduct 1.5(e) rendered the referral fee agreement unenforceable as a matter of law. Therefore, we must reverse the trial court's grant of summary judgment and remand for further proceedings consistent with this opinion.

### III.

This court must uphold a trial court's award of attorney fees pursuant to either Minn.Stat. § 549.21 (1996) or Minn. R.Civ.P. 11 unless the trial court abused its discretion in awarding the fees. *See Uselman v. Uselman,* 464 N.W.2d 130, 141, 145 (Minn.1990) (applying abuse of discretion standard under both provisions). In imposing $20,000 in sanctions against Christensen, her deceased husband's law firm and her attorneys, the trial court found Christensen's claims to be frivolous and in bad faith because they were contrary to her stipulation in the attorney's lien action and violated the public policy of the state. However, because we conclude Christensen's claims are merito-

rious, and the record contains no evidence of bad faith, the trial court abused its discretion by awarding fees and costs. *See id.* at 144 (holding a party who survives summary judgment should not be subject to sanctions for asserting frivolous claims). Therefore, we reverse the award of attorney fees to Eggen and decline to award fees on appeal.

## DECISION

Christensen's claim was not barred by the doctrine of election of remedies, and the two attorneys' failure, if any, to comply precisely with the professional rules on splitting fees did not render their agreement unenforceable as a matter of law. We reverse the trial court's award of attorney fees as an abuse of discretion and decline to award Eggen fees on appeal.

**Reversed and remanded.**

HARTEN, Judge (concurring in part, dissenting in part).

I respectfully dissent because the court divines a genuine issue of material fact where there is none and otherwise presumes to water-down by application of a substantial compliance analysis a professional rule established by the supreme court.

Minn.R.Prof. Conduct 1.5(e) provides:

A division of fee between lawyers who are not in the same firm may be made *only* if:

(1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;

(2) *the client is advised of the share that each lawyer is to receive* and does not object to the participation of all the lawyers involved; and

(3) the total fee is reasonable.

(Emphasis added).

At oral argument, counsel for appellants had no choice but to admit that *Koch was*

*never advised of the share that Hollender would receive.* While appellants argue that this rule infraction was insubstantial, I disagree. The plain language of the rule mandates that all three requirements be met or fee division is prohibited. A violation of the rule is thus unquestionably established and there is absolutely no genuine issue of material fact on that point. Moreover, there is no indication in the record that Hollender's alleged 1/3 fee was in proportion to his services. Hollender's death in June 1992 was preceded by at least seven months of no contact between Hollender and Eggen regarding the Koch litigation. Even though all the medical defendants had been served with process 18 months before Hollender's death, in her affidavit, the lead attorney for the medical defendants stated that she had no contact whatsoever with Hollender.

I understand that a violation of the Rules of Professional Conduct cannot give rise to a private action against an attorney. *L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 380 (Minn.1989); *see also* Scope, Minn. R.Prof. Conduct. This case, however, involves the issue of whether an alleged contract for the division of fees is enforceable, even though it violates the Rules of Professional Conduct. In *Rossman v. 740 River Drive*, 308 Minn. 134, 241 N.W.2d 91 (1976), the supreme court stated that

public policy requires that freedom of contract remain inviolate except only in cases when the particular contract violates some principle which is of even greater importance to the general public.

*Id.* at 136, 241 N.W.2d at 92. As an example, contingent fee arrangements in divorce cases have been held void as against public policy. *Baskerville v. Baskerville*, 246 Minn. 496, 504, 75 N.W.2d 762, 768 (1956).

A client has an unrestricted right to agree with his or her attorney as to compensation for services and the manner and measure of payment. *Burns v. Valene*, 298 Minn. 257, 260, 214 N.W.2d 686, 689 (1974); Minn.Stat. § 549.01 (1996). By not being advised as to the share Hollender would receive, Koch was

denied this right. I conclude that the alleged division of fee agreement between Eggen and Hollender violates public policy as expressed in rule 1.5 and is thus unenforceable. *See Barna, Guzy & Steffen, Ltd. v. Beens,* 541 N.W.2d 354, 356 (Minn.App.1995) (contract which violates law or public policy is void), *review denied* (Minn. Feb. 27, 1996).[1]

Finally, it is inappropriate for this court to dilute the plain language of a professional rule established by the supreme court. Construction of its own rules involving public policy is the prerogative of the supreme court. If the lesser standard of substantial compliance applies to rules governing the practice of law in this state, it is for the supreme court to say so.

I otherwise concur with the court that the district court erred in concluding that the election of remedies doctrine barred Christensen's declaratory judgment action.

**1.** Appellants argue that they have been deprived of the benefit of Eggen's file to see if there were additional communications between Eggen and Koch regarding the alleged division of fee agreement. After Christensen noticed Eggen's deposition, the district court stayed discovery pending the outcome of Eggen's dispositive motion. Appellants did not request a stay of Eggen's summary judgment motion under Minn.R.Civ.P. 56.06 to pursue additional discovery to enable possible presentation, by affidavit, of facts essential to justify their opposition to Eggen's motion for summary judgment. If Christensen felt unable to defend properly against the summary judgment motion, she had the burden of requesting that the district court reopen discovery under rule 56.06. She did not do so.